# Lente, Appellant, *v.* Luci.

*Workmen's compensation—Act of June 2, 1915, section 306, P. L. 736—Permanent injury—Practical disability—Loss of second eye in course of employment.*

1. Where a workman enters into an employment after having lost one eye, and then in the course of his employment loses his remaining eye, his employer is not liable for total disability under section 306 (a) of the Act of June 2, 1915, P. L. 736, but for the disability specified in 306 (c) of the act as "for all disability resulting from permanent injuries of the following classes the compensation shall be exclusively as follows: For loss of an eye, fifty per centum of wages during one hundred and twenty-five weeks."

2. The statute fixed the amount to be paid for the loss of a hand, arm, foot, leg or eye respectively without considering, but including, all incapacity, whether such incapacity were total, partial or no incapacity at all.

3. Compensation may be made for an injury to, destruction or affection of, other organs or parts of the body produced by the permanent injury, causing a disability, separate, apart and distinct from that mentioned in section 306 (c).

4. In such cases, where it is claimed that some other part of the body is affected, it must definitely and positively appear that it is so affected, as a direct result of the permanent injury.

5. The causal connection must be complete, and, further, the disability must be separate and distinct from that which normally follows an injury under section 306 (c), and must endure beyond the time therein mentioned.

6. Section 306 (c) applies only to so-called permanent injuries whether the member be removed or not; and as to injuries not of a permanent character, but which are of a temporary nature under process of recovery, the resultant disability for compensation purposes may be partial, total, or compensable under 306 (c), where the temporary injury lapses into a permanent one, causing the total loss of a member.

7. Authorities in other states which are contrary to the conclusion reached in this case, are, as a rule, based on different legislative enactments.

Argued March 21, 1922. Appeal, No. 341, Jan. T., 1922, by plaintiff, from order of C. P. No. 1, Phila. Co.,

June T., 1921, No. 2719, sustaining decision of Workmen's Compensation Board, in case of Antonio Lente v. Frank Luci.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Appeal from decision of Workmen's Compensation Board, sustaining referee's findings.   Before PATTERSON, P. J.

The facts appear by the opinion of the Supreme Court.
Decision affirmed.   Plaintiff appealed.

*Error assigned,* inter alia, was order, quoting it.

*John J. McDevitt, Jr.,* with him *Harry A. Gorson,* for appellant.—Plaintiff was entitled to compensation for total disability: Combination Rubber Co. v. Essex County, 115 Atl. 138; Branconnier's Case, 223 Mass. 273; Kriegbaum v. Wire Works, 169 N. Y. Sup. 307; Fair v. Rubber Works, 111 Atl. 193; Hartz v. Hartford Faience Co., 90 Conn. 539; Brooks v. Peerless Oil Co., 83 So. 663; Wabash R. R. v. Commission, 286 Ill. 194; Whittle v. Chemical Co., 266 Pa. 356; Quinn v. Am. I. Shipbuilding Corp., 77 Pa. Superior Ct. 304; Pater v. Steel Co., 263 Pa. 244.

*Richard A. Smith,* with him *Louis Wagner,* for appellee, cited: Kerwin v. Am. Exp. Co., 273 Pa. 134; Kline v. Oliver Iron & Steel Co., 1 Mackey 147, 3 Dep. R. 888.

OPINION BY MR. JUSTICE KEPHART, June 24, 1922:

The claimant, employed by appellee, lost an eye from an injury in the course of employment.   The sight of the other eye had been destroyed before his employment by appellee.   The referee awarded compensation for the loss of one eye, fixed by section 306, paragraph (c), of the Compensation Act.   The board and the court below sustained the referee's findings.   It is now before us on ap-

peal, and the sole question is whether compensation should be allowed, under paragraph (a) of section 306, for total disability, the last injury taking from him his remaining sight, producing total blindness and total incapacity for labor.

Section 306 provides three classifications for compensation,—(a) "total disability," (b) "Partial disability" and (c) "all disability resulting from permanent injuries": Berskis v. Lehigh Valley Coal Co., 273 Pa. 243.

Because the question now raised is of great importance, a further discussion of this section is advisable. It is there designed to fix a schedule of payments both as to time and amount for injuries not resulting in death. The section opens with a schedule fixing compensation for total disability. This is followed by certain subdivisions, taking into account compensation and disability, total and partial, found in paragraphs (a) and (b), then comes a separate class (c), embracing all disability for injuries to certain parts of the body. Other paragraphs are included in section 306 dealing with different phases of the compensation question,—not material to the matters before us.

Paragraph (a) fixes a maximum period of five hundred weeks for a maximum and minimum payment for total disability; when such disability ceases, no future payments are to be made. This may be within any time less than, but not over, five hundred weeks. Paragraph (b) fixes the ratio of payment for partial disability, with the maximum time three hundred weeks, which, like (a), may be less than that period, and may be more if the partial disability lapses into total disability. Particular cases are excepted from this paragraph, which are included in the special classification established under paragraph (c).

Paragraph (c) fixes the total compensation for permanent injuries to certain parts of the body. Under it must be considered all disability "resulting from" or related to permanent injuries, and the compensation for

such injuries shall be "exclusively" as therein provided. It will be noted the governing feature in this paragraph is a *permanent injury,* while in the former paragraphs the governing feature is a disability from an injury. In paragraph (c), the right to compensation for the consequential feature "all disability," no matter in what degree, is measured by the extent of the injury, i. e., so much money during a given period for the loss of a hand, arm, foot, leg or eye, respectively. In other words, this legislative mandate fixed the amount to be paid in such cases without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial or no incapacity at all. This is emphasized in paragraph (b) when speaking of partial disability, where this special class of injuries is expressly excluded from being treated as partial disability; and further emphasized in paragraph (c), in dealing with total disability under (a), where the board is given authority to determine whether the loss of two members mentioned in paragraph (c) shall constitute total disability, though, by the exception of these injuries from paragraph (b) and the reference just mentioned in paragraph (c), these injuries might be considered as being in either class (a) or (b); generically they are, but the legislature, when considering the compensation to be paid on their account, has seen fit to place them in a class by themselves; in doing so, it did not intend the idea of disability or incapacity to be the moving feature; nor does their loss entitle the person injured to any other consideration, except as therein expressed. The compensation mentioned is restricted by precise language, regardless of the fact that a permanent injury might otherwise affect capacity to work. The standard thus fixed is in the nature of compensation for the damage resulting from the loss of the members there named, without regard to personal capacity to labor or loss of earning power: Kerwin v. American Express Co., 273 Pa. 134.

Appellant contends, following a line of authorities in some states, that the determining feature applicable to cases of this character is the extent to which the claimant is, in fact, incapacitated by his injury,—the same consideration that attaches to paragraphs (a) and (b) of our act. But it will be noted, in the states where such rule exists, most, if not all, do not have the exclusive feature for compensation for permanent injuries mentioned in our acts, and the grading of compensation in many is on a different basis. It is true, provision is made for permanent disability, and disability partial in character but permanent in quality, permitting an investigation into the loss of earning power or incapacity to labor. Or it may be molded on the usefulness of a member, or the permanent impairment of any of the physical functions. But the degree of capacity to labor or earn compensation establishes the grade in which the compensation should fall; the determining feature is depleted earning power or earning power impaired, as contrasted with a normal capacity. This scheme is analogous to our paragraph (b) in considering the question of partial disability, but our acts fix a scheme of compensation for permanent injuries, under paragraph (c), different from these, and there are many states having similar legislation.

As stated, section 306 includes all disability emanating from or connected with a permanent injury to the member mentioned, but it must not be understood that compensation will be denied if the physical structure of the body, distinct from the member, is affected by such permanent injury. Compensation may be made for an injury to, destruction or affection of, other organs or parts of the body produced by the permanent injury, causing a disability separate, apart and distinct from that mentioned in paragraph (c). This may be under paragraph (b), or, if total disability, under paragraph (a), as, for illustration, a latent tubercular condition in another part of the body becoming active through the permanent in-

jury; such condition presents a conception far different from that arising out of all disability resulting from permanent injury from the loss of a foot, occasioned by the destruction of a member of the body mentioned in (c). Under the latter, the compensation is fixed; it provides for a single and sole method for the specific injury, regardless of working capacity, and no other scale or standard can be adopted. But, in these cases, where it is claimed that some other part of the body is affected, it must definitely and positively appear that it is so affected, as a direct result of the permanent injury; the causal connection must be complete, and, further, the disability must be separate and distinct from that which normally follows an injury under paragraph (c), and must endure beyond the time therein mentioned. There must be a destruction, derangement or deficiency in the organs of the other parts of the body. It does not include pain, annoyance, inconveniences, disability to work or anything that may come under the term "all disability," or normally resulting from the permanent injury.

If we should adopt appellant's contention, the schedule of payments fixed in paragraph (c) would be the minimum and not the maximum, and the injured person would be entitled not only to compensation during treatment, but also the compensation mentioned in paragraph (c). The word "exclusive," would be meaningless, and all permanent injuries mentioned in paragraph (c) would bear a direct relation to paragraphs (a) and (b), and would substitute for what the legislature intended in paragraph (c) as a fixed condition,—"all disability resulting from permanent injuries," in their judgment compensatory,—a waivering and wholly unsatisfactory deduction as to loss of earning power due to a partial or total incapacity to work, occasioned by the permanent injury. This would be fixed by the injured person or his physician; all this to be added to the maximum number of weeks in paragraph (c). The legislature intended to prevent this very thing. Appellant's argument is based

on a wrong theory,—that incapacity and not injury controls this section.

Much comment is made on some of the decisions of this court, but they are all in harmony. We have not yet held that the loss of a leg or arm necessarily means its amputation. While the act does read, "amputation of the arm at a certain point should be compensable only as for a hand, and the amputation of a foot between the ankle and the knee as the loss of a foot," yet the loss of either of these may directly affect the entire member so as to make it a total loss (considering the leg from hip to toe as a member), as illustrated by Chief Justice BROWN in Pater v. Superior Steel Co., 263 Pa. 244, where an infection from the injury set in at the stump, reached above the elbow and disabled the entire arm.

The act reads "a permanent injury." A member does not necessarily need to be amputated for the injury to cause total loss, as, for instance, the foregoing illustration, or an arm crushed, hanging permanently useless at the side. A permanent injury must be one that destroys the usefulness of the member. If the injury is temporary, merely suspending usefulness, it is not permanent, and if it affects other parts of the system it may cause a partial disability, as, for illustration, the Berskis Case,— a compound fracture of the leg, with the employee in the hospital endeavoring to regain the use of the leg; such an injury is not permanent, but temporary, causing partial disability.

We must not confound the classes of injuries so that it may appear that any injury, permanent or temporary, to a member must be compensated for during a period not exceeding that limited in paragraph (c). The section applies only to so-called permanent injuries, whether the member be removed or not; and as to injuries not of a permanent character but which are of a temporary nature under process of recovery, the resultant disability for compensation purposes may be partial, total or be compensable under 306c, where the temporary injury

lapses into a permanent one, causing the total loss of the member. See Beaver Run Case following. No exact definition or rule can be laid down under these uncertain circumstances, but a strict adherence to the intent and purpose of the act of assembly applied to the facts in any given case should enable the board to properly decide the questions before it.

Appellant presents a case bearing strongly on the sympathies of the court, but we are construing an act of assembly which has been worked out after a careful consideration of all the features entering into it, and the result of a contrary conclusion would mean that thousands of men employed in this Commonwealth who have only one leg, one arm or one eye would be subjected to a very great handicap in the field of labor. If we hold that, by loss of the other arm, leg or eye, their employer is bound to compensate them for total disability, representing a difference between $5,000 and $2,000, it surely will follow these men will lose their employment. No one will employ such a man when another, without handicap, equally as good, can be secured. Unless the legislature directs it, we must not create such condition merely to recompense this man, even if it is a distressing case of total blindness.

Claimant lost one of his eyes before he entered this employment,—he may not have compensation in another case for the loss of this member; and if we now compensate him for total disability, he would be getting a preference over his neighbor who might have lost both eyes in the same accident.

The order or the court below is affirmed; costs to be paid by appellant.