# Ludington, Appellant *v.* Russell Coal Mining Company, and State Workmen's Insurance Fund of Pennsylvania.

*Workmen's Compensation Law—Clauses (a), (b) and (c) of Sec. 306 of Act of 1915—Partial disability—Computing computation of time of payment for.*

The period of 300 weeks for which a claimant may be compensated under section 306 (b) of the Workmen's Compensation Act of 1915 for partial disability, separate and distinct from the disability due to the loss of a member, begins to run on the 14th day after the injury and runs continuously until it expires. Such period runs concurrently with the time during which payment is made for permanent injuries under section 306 (c), and also concurrently with the time during which a claimant is not entitled to compensation by reason of receiving wages higher than before the injury.

If total disability of a claimant be followed by partial disability the period of 300 weeks will be reduced by the number of weeks during which compensation was paid for total disability.

Submitted November 8, 1926. Appeal No. 43, April T., 1927, by plaintiff from judgment of C. P. Indiana County, June T., 1926, No. 133, in the case of L. R. Ludington v. Russell Coal Mining Company, State Workmen's Insurance Fund of Pennsylvania. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Appeal from award of Workmen's Compensation Board. Before LANGHAM, P. J.

The facts are stated in the opinion of the Superior Court.

The court reversed the award of the Workmen's Compensation Board. Claimant appealed.

*Error assigned* was the decree of the court.

*Peter P. Jurchak,* and with him *Roger J. Dever,* for appellant, cited: Gairt v. Curry Coal Co., 272 Pa. 494; Manley v. Lycoming Motors Corp., 83 Pa. Superior Ct. 173.

*Samuel I. Spyker*, and with him *George W. Woodruff*, Attorney General, for State Workmen's Insurance Fund, appellee.

OPINION BY CUNNINGHAM, J., March 3, 1927:

Appellant was the claimant in proceedings instituted to compel payment by his employer, the Russell Coal Mining Company, of certain amounts alleged to be due him, in addition to those already paid by it under the Workmen's Compensation Act of June 2, 1915, P. L. 736. On July 7, 1925, the claimant presented a petition for reinstatement of a compensation agreement for partial disability, dated March 11, 1921, under which the employer had made payments up to May 24, 1921, and then declined to make further payments. The referee ordered a resumption of payments by the employer's insurance carrier, the State Workmen's Insurance Fund, as of July 7, 1925, for partial disability. Upon appeal by the insurance carrier to the Workmen's Compensation Board that board affirmed the findings of fact and conclusions of law of the referee and the carrier then appealed to the Court of Common Pleas of Indiana County. The court below in an opinion filed sustained exceptions to the decision of the Workmen's Compensation Board, reversed its findings and entered judgment in favor of the employer and its insurance carrier. From this judgment of the Court of Common Pleas of Indiana County we have the present appeal.

The controlling facts are not in dispute and the question of law involved is whether the maximum period of 300 weeks, during which the partial disability contemplated by paragraph (b) of Section 306 of the Act of 1915 may be compensable, began, in this case, on March 11, 1921, as held by the referee and the board, or upon the fifteenth day after the accident in which the injuries were suffered, as held by the learned presi-

dent judge of the court below. From the record we note the following uncontroverted facts: Claimant while in the course of his employment for the Russell Coal Mining Company met with an accident on February 21, 1918, on which date he fell against a fuse wire and hoist in a coal mine and suffered electric burns on the right side of his neck and above his right eye. As a result he was totally disabled and, under the original compensation agreement, was paid compensation for total disability under paragraph (a) of Section 306, from March 8, 1918, to October 18, 1918, a period of 32 weeks, at the maximum rate of $10 per week. At the end of this period claimant lost his right eye as a result of the accident and under an appropriate agreement was paid under paragraph (c) of Section 306 fifty per cent of his wages for 125 weeks, beginning October 18, 1918, and ending March 11, 1921. During this period claimant, although partially disabled, worked for his employer and earned wages higher than he was receiving at the time of the accident. From the end of the last mentioned period, to wit, March 11, 1921, claimant was still employed, but at wages lower than at the time of his injury, and the agreement of March 11, 1921, for partial disability under paragraph (b) of Section 306 was then entered into and payments were made under it until May 24, 1921, a period of 10 weeks and 5 days, at which time claimant was elected check-weighman at the mine, and his wages again became higher than at the time of the accident. He continued in this employment until January 1, 1925, a period of 184 weeks, when the mine closed down. At that time claimant was still partially disabled and, although he subsequently worked as a solicitor, was not able to earn as much as he was receiving at the time of his injury. Under these circumstances the petition of June 7, 1925, for reinstatement of the agreement of March 11, 1921, was presented.

Claimant had not then fully recovered from his injuries and a part of his disability was distinct from and in addition to the loss of the sight of his right eye. The medical testimony at the time of the application for reinstatement of the agreement showed that he had been injured about the head, neck and right shoulder and that his right arm was weak and its movements restricted. Under these facts the Workmen's Compensation Board held that the agreement of March 11, 1921, had a potential life of 300 weeks from that date, subject to a deduction of the 32 weeks during which claimant was paid for total disability, leaving "the potential life of the agreement for partial disability, separate and distinct from the injury to the eye, 268 weeks or until May 18, 1926." The Court of Common Pleas held that the period of 300 weeks began to run on the fifteenth day after the accident, or March 8, 1918, and ended December 6, 1923; that claimant had been paid all compensation due him up to May 24, 1921; and that, as from May 24, 1921, to the date of expiration fixed by the court, December 6, 1923, he had earned higher wages than he was receiving at the time of the injury, no additional compensation was due him and all his rights to compensation for the injuries suffered in that accident ceased on December 6, 1923. The amendments to the Workmen's Compensation Act approved June 26, 1919, P. L. 642, expressly provide that sections 1, 2 and 3 of the amending act shall not apply to any accident occurring prior to midnight on the 31st day of December, 1919. This case must therefore be determined solely under the provisions of the original Act of 1915. The exact question involved on this appeal was neither raised nor decided in Bausch v. Fidler, App., 277 Pa. 573, cited and relied upon by the board and by claimant, but there are some expressions in the opinion of the Supreme Court in that case which the board has endeavored to apply to the

different state of facts here present with the usual result. We are confronted with the duty of construing paragraphs (a), (b) and (c) of Section 306—the section relating to injuries not resulting in death—in so far as their provisions are applicable to the facts in this particular case. These paragraphs of this section were construed by our Supreme Court in Lente, App., v. Luci, 275 Pa. 217. It was there said: "Section 306 provides three classifications for compensation,—(a) 'total disability,' (b) 'partial disability' and (c) 'all disability resulting from permanent injuries': Berskis v. Lehigh Valley Coal Co., 273 Pa. 243. ......
It is there designed to fix a schedule of payments both as to time and amount for injuries not resulting in death. The section opens with a schedule fixing compensation for total disability. This is followed by certain subdivisions, taking into account compensation and disability, total and partial, found in paragraphs (a) and (b), then comes a separate class (c), embracing all disability for injuries to certain parts of the body. ....... Paragraph (a) fixes a maximum period of five hundred weeks for a maximum and minimum payment for total disability; when such disability ceases, no future payments are to be made. This may be within any time less than, but not over, five hundred weeks. Paragraph (b) fixes the ratio of payment for partial disability, with the maximum time three hundred weeks, which, like (a), may be less than that period, and may be more if the partial disability lapses into total disability. Particular cases are excepted from this paragraph, which are included in the special classification established under paragraph (c). Paragraph (c) fixes the total compensation for permanent injuries to certain parts of the body. Under it must be considered all disability 'resulting from' or related to permanent injuries, and the compensation for such injuries shall be 'exclusively' as therein pro-

vided.'' To what was there said we may add with respect to paragraphs (a) and (b), as applied to this case, that the measure of compensation under (a) for total disability is fifty per cent of the wages of the injured employe at the time of the injury, but not exceeding $10 per week, and under paragraph (b) for partial disability the measure is fifty per cent of the difference between such wages and the earning power of the employe thereafter. These paragraphs, taken together, also show that it was the legislative intent in their enactment to provide appropriate compensation where the disability arising from the injuries might be total at first and then become partial, or only partial in the beginning followed by total, for it is expressly provided in (b) that, if total disability be followed by partial (as in the present case), the period of 300 weeks therein mentioned shall be reduced by the number of weeks during which compensation was paid for such total disability, and in (a) that, if partial disability be followed by total, the period of 500 weeks therein specified shall be reduced by the number of weeks during which compensation was paid for such partial disability. Thus we have flexible provisions applicable to both degrees of disability when and as each may exist. Neither of these paragraphs however is applicable to the disability which results from ''permanent injuries'' of certain specified classes—in this case ''the loss of an eye.'' Such disability is to be compensated for ''exclusively'' under paragraph (c). The partial disability contemplated by paragraph (b) is all disability partial in character ''except the particular cases mentioned in clause (c).'' Speaking of the compensation to be paid on account of the ''permanent injuries'' specified in paragraph (c) our Supreme Court said (Lente, App., v. Luci, supra, p. 220) that the Legislature has seen fit to place them in a class by themselves, and, ''in doing so, it did not intend the

idea of disability or incapacity to be the moving feature; nor does their [certain members] loss entitle the person injured to any other consideration, except as therein expressed. The compensation mentioned is restricted by precise language, regardless of the fact that a permanent injury might otherwise affect capacity to work. The standard thus fixed is in the nature of compensation for the damage resulting from the loss of the members there named, without regard to personal capacity to labor or loss of earning power: Kerwin v. American Express Co., 273 Pa. 134.''

In the later case of Bausch v. Fidler, App., supra, p. 576, the Supreme Court again referred to the proper construction of paragraph (c) in this language: ''As held in Lente v. Luci, 275 Pa. 217, under Section 306 (c), the term 'all disability' includes both total and partial disability, caused by the permanent injury to the members mentioned, or resulting from or related to the permanent injury. It embraces not only all incapacity to labor, directly or indirectly arising from such permanent injury, whether total or partial, but likewise, cases of no incapacity at all. The compensation includes payments while the claimant is undergoing treatment. Payment for the loss of such members, or treatment charges, cannot be made under Section 306, paragraphs (a) and (b), either for partial or total disability. But Section 306 (c) does not include defections to other parts of the physical structure, distinct from the permanently injured member, though directly caused thereby. Compensation may be made for an injury to, destruction or affection of, other organs or parts of the body, produced by the permanent injury, causing a disability separate, apart and distinct from that mentioned in paragraph (c). This may be under paragraph (a) or (b): Lente v. Luci, supra.''

Applying these principles of law, as declared by our

Supreme Court, to the facts in this case, and giving the claimant the benefit of the most favorable construction of these facts, we may conclude that from and after the period of 32 weeks of total disability ending October 18, 1918, he suffered, not only from the disability resulting from the loss of his right eye (compensable under paragraph (c) and for which he was paid in full under that paragraph) but also from injuries to other parts of his body, causing a partial disability "separate, apart and distinct from" the loss of the eye, and compensable under paragraph (b). It may also be concluded that this separate and distinct partial disability began at the end of the period of total disability on October 18, 1918, and existed continuously down to the date of the application for reinstatement of the agreement in question, July 7, 1925, or 377 weeks after the injury. Was claimant entitled at that time, under paragraph (b), to compel, by reason of the diminution then existing in his earning power, a resumption of payments and to have them continued (providing the disability and diminution continued) for the unexpired portion of a period of 300 weeks, beginning as of March 11, 1921, the date of the agreement which he seeks to have reinstated? The answer depends entirely upon when the period of 300 weeks specified in paragraph (b) began. It is therein expressly provided that "This compensation shall be paid during the period of such partial disability; not, however, beyond three hundred weeks after the fourteenth day of such total disability." In this connection it should be noted in passing that this clause of the paragraph was amended by the amendments of 1919 to read, "not, however, beyond three hundred weeks after the tenth day of such *partial* disability," and we express no opinion at this time with respect to the possible effect of this amendment upon cases where the accident occurred after December 31, 1919. Con-

fining our consideration to the above quoted provisions of the original Act of 1915 we are of opinion that the period of 300 weeks specified in (b) began to run in this case on the fourteenth day after the injury, March 8, 1918, and ran continuously until December 6, 1923, upon which date it expired. It follows that the claimant was not entitled to have the agreement reinstated on July 7, 1925, and that the conclusion reached by the court below was right. No injustice is done the claimant under this construction. He was paid under paragraph (a) for total disability for 32 weeks or until October 18, 1918. At that time he resumed his employment with the same employer. Having by that time lost the sight of his eye he became entitled to receive and did receive the compensation due him under paragraph (c) for that permanent injury. He also became entitled theoretically at that time to compensation under paragraph (b) for the partial disability, separate, apart and distinct from the loss of his eye, from which he then suffered, but, as a practical matter, from October 18, 1918, to March 11, 1921, the wages which he earned, notwithstanding his partial disability, equalled or exceeded the wages he was earning at the time of the injury. This condition with respect to his earning power changed on March 11, 1921, and the diminution therein continued until May 24, 1921. During this period he was paid compensation equivalent to fifty per cent of the difference between the wages he then earned and his wages at the time of the accident. Beginning May 24, 1921, and continuing until January 1, 1925, his earning power was greater than it was at the date of injury. Between those dates, namely, on December 6, 1923, the period of "three hundred weeks after the fourteenth day of" his "total disability" expired. It is therefor clear that claimant has received, during each one of these 300 weeks, either wages in excess of those he was

earning at the time of the injury, or the compensation to which he was entitled under paragraphs (a) and (b) and, in addition thereto, has received the compensation prescribed by paragraph (c) for the loss of his eye.

The assignments of error are overruled and the judgment of the Court of Common Pleas of Indiana County is affirmed.