## Colchiagle v. Union Collieries Company, Appellant.

Argued April 13, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

84

*Edw. J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*Fred J. Jordan,* with him *Murray J. Jordan,* for appellee.

OPINION BY CUNNINGHAM, J., June 29, 1938:

The single question involved upon this appeal by the employer in a workmen's compensation case, from the judgment entered by the court below upon an award to an employee for the permanent loss of the use of his left eye, is whether the record contains competent evidence supporting the findings made by the referee and adopted by the board.

For a number of years the claimant had been in the employ of the defendant coal company as a trackman; while in the course of his employment on November 29, 1935, he accidentally suffered an injury when "a foreign body flew in his eye embedding itself in the cornea and setting up inflammation." An open agreement for compensation, at the rate of $15 per week for total disability, was executed on December 31, 1935. Under this agreement claimant was paid $105 for the period from December 6, 1935, to January 23, 1936, and was tendered a check for $27.86 for the period from January 24 to February 5, 1936, accompanied with a request that he sign a final receipt. He returned to work as an assistant trackman, and at a slightly lower wage, on February 6, but declined to sign the receipt.

The issue arose under the employer's petition for

termination of the agreement. It was filed on June 26, 1936, under the second paragraph of Section 413 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended April 13, 1927, P. L. 186, 77 PS §§772-774, upon the ground that claimant's disability had finally ceased on February 6, 1936, and that his earning power had not been impaired. To this petition claimant answered, "I have lost the industrial use of my left eye." Under the issue raised by the answer all questions relative to the existence of disability or its extent were eliminated from the case: *Lente v. Luci,* 275 Pa. 217, 119 A. 132.

The matter came on for a hearing before a referee on January 12, 1937. The witnesses by whom the employer endeavored to support its petition were the assistant company doctor and two eye specialists. It was conceded by both specialists that the vision of claimant's left eye had been lost for all practical purposes. The controverted question was how much, if any, of the loss of vision was attributable to the accident of November 29, 1935.

Dr. F. A. Miller, the assistant company doctor at the mine, stated he "discovered a foreign body in the cornea, impacted in the cornea of the left eye," on the day of the accident; that he removed it, cauterized the lesion with acid, applied a patch, and referred claimant to Dr. J. S. Steim, one of the specialists.

Dr. Steim testified: "He (claimant) had a stain on the cornea, following the removal of a foreign body. The site of the foreign body there developed an ulcer of the eye, eventually it quieted down and on December 21st, I examined him and found a small corneal scar measuring possibly less than two millimeters." His further testimony was to the effect that he did not examine claimant's right eye, but found he had no vision in the left. With respect to the cause of the loss of vision in that eye, Dr. Steim was of opinion that if claimant had

normal vision in it prior to the accident the scar "would slightly damage vision" but would not "abolish" it. The substance of the testimony of this witness was that claimant must have had low vision in the eye prior to the accident.

This feature of the case was more fully developed in the testimony of Dr. John S. Plumer, the other specialist, who examined claimant a few days before the hearing. An excerpt from his testimony reads: "I found the right eye to be practically normal. He had a condition of far-sightedness in [that] eye, ...... The left eye, the record showed he recognized a hand, a distance of one foot, with the right eye covered. I tried various lenses in front of the left eye, and they apparently did not improve the vision. Intra-ocular pressure, that is in each eye, was found to be normal. I did that to rule out the possibility of glaucoma, as the cause of the lowered vision in the left eye. He had in the left eye, an irregular nystagmus, of the ocular type, as distinguished from the labyrinthine type. Examination of the left eye showed he had a small superficial opacity involving the cornea. This scar, or opacity, was situated near the center of the cornea, but slightly below the nasal side, referring to the patient's nose. Examination of the interior of the eye, by means of an ophthalmoscope, disclosed no obvious disease in the fundus in the optic nerve. The lens of the left eye was clear." The witness stated that while the scar "interfered with the vision" and "could cause slight blurring ...... it would not knock out 99% of his vision, provided he had good vision before." In another portion of his testimony Dr. Plumer described the "nystagmus," to which he had referred, as a "moving of the eye, or ocular tie that often goes with poor vision, due to destructive central connectives, mechanism, irrespective of scarring. We see many people with that twitching effect. You can't tell how long he had that."

The Oxford English dictionary states this condition is frequently found in the eyes of miners. Reference was also made by Dr. Plumer to another pre-existing condition in claimant's eye, described as "amblyopia." A portion of his cross-examination reads: "Q. What is amblyopia? A. It is a lack of proper vision due to failure of visual acuity in the eye. It very often occurs in farsighted eyes. Q. Could that condition be aggravated by trauma? A. Of course, if he had a *small amount of trauma it would snuff out that vision he had.* Q. Would trauma reduce the vision, if he had amblyopia before? A. Yes, if he had it, it could be reduced by trauma." (Italics supplied) Dr. Steim was not in accord with Dr. Plumer upon this point, but the referee was at liberty to adopt the opinion of the latter.

At the conclusion of the testimony in support of the petition claimant testified in his own behalf. Relative to the condition of his eye prior to the accident, his testimony reads: "Q. Did you have any trouble before you got the foreign body in the eye? A. I didn't have any trouble. I could look around good, but now I can't look around any more. I have only one eye to use now. Q. Did you have any trouble before your eye was injured, did you have any trouble with this left eye? A. No, I didn't. Q. When did you first notice that your vision in that left eye was affected? A. I never noticed anything until I got hurt. ...... Q. Since you were hurt, like right after you got this piece of foreign matter in the eye, could you see for a little while, or did you lose the vision right away? A. I lost the vision right away. Q. How did you know that? A. I come back from the doctor's and I looked in the looking glass and I couldn't see my face in it." As bearing upon the condition of the eye prior to the accident, he testified that when the defendant company took over the mine from a former owner he was examined, including his eyes, by

Dr. Reynolds, the company doctor, and accepted for employment.

Upon this testimony the referee, on January 26, 1937, made findings of fact, one of which reads: "Third: After a careful review of all the medical testimony taken in this case, your referee believes and so finds as a fact that the claimant, as a result of his accidental injury of November 29, 1935, has lost the industrial vision of his left eye." The referee's conclusion of law was that the petition for termination should be dismissed and the compensation agreement so modified as to provide for the payment of compensation, under section 306(c), as amended April 13, 1927, P. L. 186, 77 PS §513, for the permanent loss of the use of the eye, for the definite period of 125 weeks, at the rate of $15 per week, subject to credit for the amount already paid under the agreement.

Upon the employer's appeal to the board the findings of fact and conclusions of law of the referee were adopted by it and the appeal dismissed. The employer then appealed to the court below. Its exceptions were argued before that court, in banc, and in an opinion filed January 11, 1938, by SMITH, J., the exceptions were dismissed and judgment entered in favor of the claimant for $1,770—125 weeks at $15 per week, less $105 theretofore paid—with interest, as provided in the statute.

Our review of the record convinces a majority of the members of this court that the judgment should be affirmed. Even if read in the light most favorable to the employer, the evidence still supports a finding that the accident of November 29, 1935, at least so injuriously affected a pre-existing condition of defective vision (but which had been passed by the employer's medical examiner) as to destroy the sight of claimant's left eye.

Judgment affirmed.