## Eagle v. Reading Company et al., Appellants.

Argued November 18, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Thomas Iaeger Snyder,* of *Zieber & Snyder,* with him *Geo. A. Kershner,* for appellant No. 22.

*S. H. Torchia,* with him *Ralph H. Behney, Claude T. Reno,* Attorney General, and *Sol R. Gitman,* for appellant, No. 24.

*John A. Moss,* of *Richardson, Moss & Richardson,* for appellee.

OPINION BY KENWORTHEY, J., March 2, 1942:

Claimant in this compensation case, on October 14, 1914 (before the effective date of the Workmen's Compensation Act), sustained an accidental injury in the course of his employment, resulting in the loss of use, for industrial purposes, of his left foot. On March 29, 1938, he sustained a second accidental injury in the course of his employment, necessitating the amputation of his right leg above the knee. It is admitted that, as a result of the combined injuries, he is totally disabled. The referee and the board awarded compensation for the loss of a leg, limited to two hundred and fifty weeks, under Sec. 306(c). On appeal, the Court of Common Pleas, applying the provisions of Sec. 306 (g) of the Act of 1937,[1] reversed the board and awarded compensation for total disability, and entered judgment accordingly against the employer and the Second Injury

---

[1] June 4, P. L. 1552, Sec. 306(g), 77 PS 652.

Reserve Account of the State Workmen's Insurance Fund. The form of the judgment was such that the employer was bound to pay all compensation awarded, but was entitled to be reimbursed from the Second Injury Reserve Account for payments beyond two hundred and fifty weeks to such extent as there might be funds in said account out of which reimbursement could be made. Both the employer and the Second Injury Reserve Account have appealed. Both contend Sec. 306 (g) is unconstitutional because it and Sec. 321,[2] which was held unconstitutional by the Supreme Court in *Rich Hill Coal Co. v. Bashore,* 334 Pa. 449, 499, 7 A. (2d) 302, are interdependent. *Rosenfield v. Drake,* 112 Pa. Superior Ct. 1, 5, 170 A. 414; *Booth & Flinn, Ltd. v. Miller,* 237 Pa. 297, 85 A. 457; Statutory Construction Act, 1937, May 28, P. L. 1019, Sec. 55, 46 PS 555. In the alternative, the employer contends its liability is limited to the two hundred and fifty weeks fixed by the board and it should not be made liable for the full amount with a nebulous right to reimbursement from the fund.

The Act of 1937 was an act, inter alia, "...... providing for the payment of compensation for certain second injuries, ...... *out of moneys required to be paid into the State Treasury by certain employers and insurance carriers in death cases, where there are no dependents; ......*" (Italics supplied)

The relevant portions of Sec. 306(g) are: "...... if an employe, who has previously suffered a major permanent injury, receive an injury compensable under this act which of itself is a permanent injury, ...... compensation for such ...... total disability ...... shall be paid *out of the moneys existing to the credit of the second injury reserve account* ...... as follows: (2) ...... an amount equivalent to the difference between the compensation payable for any prior major

---

[2] Act of 1937, June 4, P. L. 1552, Sec. 321, 77 PS 673.

permanent injury and the amount payable for total disability under clause (a) of this section ......"
"The employer of any such employee shall be responsible for compensating the injured employe for the second injuries and in the manner prescribed in this subsection, but shall be relieved from the payment of compensation to such employe to the extent such compensation is paid under this subsection out of the second injury reserve account of the State Workmen's Insurance Fund." (Italics supplied)

Sec. 321 provides: "In the case of an employe who dies as the result of an injury received in the course of his employment and who leaves no dependents entitled to receive in excess of fifteen hundred dollars ($1,500) compensation under this act, the employer or his insurance carrier, as the case may be, shall pay the sum of fifteen hundred dollars ($1,500) to the department, or the difference between the amount paid to such dependents and the sum of fifteen hundred dollars ($1,500) ...... (c) ...... All amounts credited to the second injury reserve account are hereby appropriated to the department for the payment of the compensation provided in clause (g) of section three hundred and six of this act."

The obvious intention of the Legislature was to change the prior law, under which an employe, who suffered permanent injury which by itself was not totally disabling, was limited to compensation under 306(c), even though, combined with a previous permanent injury, it produced total disability. *Lente v. Luci*, 275 Pa. 217, 119 A. 132. Whether by Sec. 306(g) the employer was intended to be primarily liable for the full amount of compensation payable under it, with the right of reimbursement from the Second Injury Reserve Account, if funds were available, or whether it was intended that the employer's liability, in any event, should be limited to the payment of compensation provided in Sec. 306(c), with the employe look-

ing exclusively to the Second Injury Reserve Account for any payments of compensation beyond this limit, is not clear. In the view we take of the case, it is not necessary to determine this question. It is our opinion that all of the provisions of Sec. 306(g) are so dependent upon Sec. 321 that the effect of striking down Sec. 321 was to carry with it Sec. 306(g). The title indicates that the act is to provide for payment of compensation for certain second injuries "out of moneys required to be paid into the State Treasury by certain employers and insurance carriers in death cases, where there are no dependents." Although the Legislature made a commendable attempt to relieve injured employes of this particular class, it must be presumed to have had in mind the excessive—perhaps unreasonable —burden of compelling an employer, in effect, to pay compensation for an injury not sustained while in his employ and to have had in mind, as pointed out in Lente v. Luci, supra at p. 224, that it "would mean that thousands of men employed in this Commonwealth who have only one leg, one arm or one eye would be subjected to a very great handicap in the field of labor" and that, "If we hold that, by loss of the other arm, leg or eye, their employer is bound to compensate them for total disability ...... it surely will follow these men will lose their employment. No one will employ such a man when another, without handicap, equally as good, can be secured." Having in mind all these considerations, there are three interdependent aspects of the scheme which the Legislature adopted: (1) The provision by Sec. 321 for the creation of a fund; (2) the provision by Sec. 306(g) for the extra payments to the employe; and (3) the provision of Sec. 306(g) that the ultimate burden (regardless of where it first falls) for the excess payments would fall on the fund and not on the particular employer for whom the employe was working at the time of his second injury. Without all

these features, it is unreasonable to suppose the Legislature would have intended any of them.

The court below placed considerable stress on the fact that the Second Injury Reserve Account is composed of funds from three sources: (1) contributions under Sec. 321; (2) payment of fines and penalties under Sec. 504;[3] and (3) appropriations by the Commonwealth under Sec. 7(b) of the Occupational Disease Compensation Act.[4] But the difficulty is that appropriations under Sec. 7(b) are expressly limited to the payment of claims for occupational diseases and, although there seems to be no such restriction with regard to the use of the funds paid in by fines and penalties, such funds were clearly never intended to be adequate.

The judgment against the Second Injury Reserve Account in No. 24 is reversed. The judgment against the Reading Company in No. 22 is reversed and the record is remanded with the direction that the court enter judgment for claimant on the award of the Workmen's Compensation Board.

DISSENTING OPINION BY RHODES, J.:

I would affirm the judgment of the court below. It seems to me that the judgment could very well be affirmed on the opinion and supplemental opinion by President Judge PAUL N. SCHAEFFER, reported in 33 Berks C. L. J. 27, and 33 Berks C. L. J. 155, respectively. The lucid reasoning therein clearly demonstrates that the judgment should be sustained.

In addition, I think reference should probably be made to the conclusion in the majority opinion which is stated thus: "It is our opinion that all of the provisions of Sec. 306 (g) are so dependent upon Sec. 321 that the effect of striking down Sec. 321 was to carry

---

[3] Act of 1937, June 4, P. L. 1552, Sec. 504, 77 PS 1022a.
[4] Act of 1937, July 2, P. L. 2714, Sec. 7(b), 77 PS 1107(b).

with it Sec. 306 (g)." It would seem that this statement also assumes that our Supreme Court in *Rich Hill Coal Co. et al. v. Bashore,* 334 Pa. 449, 7 A. 2d 302, declared all of section 321 unconstitutional. With this I do not agree. The opinion of the Supreme Court in the Rich Hill case by Mr. Justice MAXEY was handed down on March 27, 1939. Subsequently a petition for reargument was presented asking the court to dispose of the questions raised concerning the validity of sections 321 and 502 of the Act of June 4, 1937, P. L. 1552, in accordance with the provisions of section 101 of that act. On April 15, 1939, the court handed down a supplemental opinion by Mr. Chief Justice KEPHART wherein section 321 was disposed of in the following language (334 Pa. 449, at page 499) : "Section 321 of the Act of 1937, which seeks to compel employers or their insurance carriers to make a payment to the Commonwealth in the amount of $1,500 for the death of any employee leaving no dependents, if such employee's death would have been compensable had he been survived by dependents, is also unconstitutional. This sum of money is now directed by the legislature to be paid to the Commonwealth for various specified purposes. It might just as well, if such an imposition is legal, have diverted this money to any purpose it pleased. This section likewise actually provides for taxation, in violation of our equal protection and reasonable classification provisions (Article IX, section 1). It is a flat levy of a sum of money on one group of employers in the Commonwealth, from which all other employers are excluded. Considered as a tax it comes clearly under the condemnation of the Constitution for the reasons above set forth." The petition for reargument prayed the court to dispose of "questions raised" concerning the validity of section 321. By referring to the six briefs filed in the Rich Hill case these may be readily determined. As far as I can find the only question raised by the plaintiffs as to section 321 was that "the payment

of $1,500 by an employer under section 321 is a tax," and as such violated the fourteenth amendment of the Constitution of the United States and article 9, §1, of the Constitution of the Commonwealth of Pennsylvania.

Moreover, as reference to the briefs will disclose, the plaintiffs not only raised no question as to the validity of the Second Injury Reserve Account, but disclaimed any such intention. See plaintiffs' reply brief, p. 19; brief for defendant by Attorney General, pp. 120-132. The only reference in plaintiffs' briefs to other than the first paragraph of section 321 is a statement on page 84 attacking paragraphs (b) and (c) of section 321 on the ground of insufficiency of the title of the act. As the Supreme Court in its opinions did not consider this question, we may assume that the contention was not considered to be worthy of notice.

Section 321 (b) directed the Department of Labor and Industry to pay part of the $1,500 received in each case into the Federal Rehabilitation Fund of the State Treasury, and then appropriated the money to the department for all expenses incurred by it under the rehabilitation laws of this Commonwealth for the rehabilitation of injured employees who are entitled to compensation under the Workmen's Compensation Act, and who are, as a result of their injuries, totally or partially incapacitated for remunerative employment in the line of employment in which they were employed at the time of injury.

Section 321 (c) provided as follows: "(c) The balance of any amount received by the department under this section shall be paid by it into the State Workmen's Insurance Fund of the State Treasury, through the Department of Revenue, which amount shall be credited to a ledger account to be known as the second injury reserve account. All amounts credited to the second injury reserve account are hereby appropriated to the department for the payment of the compensation provided in clause (g) of section three hundred and six

of this act." I do not believe that the Supreme Court in the Rich Hill case intended to or did invalidate section 321 in its entirety. The unlettered first paragraph of section 321 was attacked as unconstitutional, and only as to that paragraph was any question raised as to the validity of that section. Certainly it would not follow because part of the unconstitutional tax was appropriated by section 321 (b) to the Federal Rehabilitation Fund that the rehabilitation laws of this Commonwealth have been thereby invalidated. It is equally clear that because the balance of the unconstitutional tax was directed by section 321 (c) to be credited to a ledger account to be known as the Second Injury Reserve Account, and all moneys so credited appropriated to the department for the payment of the compensation provided in section 306 (g), the Second Injury Reserve Account as such and section 306 (g) are not rendered unconstitutional. The validity of section 321 (b) and section 321 (c) was not, as I view it, among the questions raised in the Rich Hill case, and I am not persuaded that the Supreme Court intended to declare them unconstitutional in the absence of argument or specific consideration. But I am convinced that the Supreme Court's opinions in the Rich Hill case, in so far as section 321 is concerned, could have no application to anything other than the first paragraph of that section. Perhaps it is unfortunate that the first paragraph of section 321 was not lettered (a), as the second paragraph was lettered (b), and the third (c). In view of the fact that the constitutionality of this section was subsequently considered on petition to dispose of it on "questions raised," I think it is pertinent to point out that Mr. Justice MAXEY, in the opinion of the court, after specifically enumerating the six provisions of the act which were declared unconstitutional, stated (334 Pa. 449, at page 493) that except for them "the Workmen's Compensation Acts of June 4, 1937, P. L. 1552, and July 2, 1937, P. L.

2714, and Act No. 20, approved September 29, 1938, P. L. 52, are *not* adjudged to be unconstitutional ......"

As the court below in its opinion in the present case said, section 504 provides a source from which funds would go into the Second Injury Reserve Account. The unconstitutional provision in the first paragraph of section 321 was not the only source of revenue; but even if there was no money in this fund, and without regard to the provisions of section 504, I do not think that section 306 (g) can be said to be unworkable. The primary obligation was placed on the employer in the following language: "The employer of any such employe shall be responsible for compensating the injured employe for the second injuries and in the manner prescribed in this subsection, but shall be relieved from the payment of compensation to such employe to the extent such compensation is paid under this subsection out of the second injury reserve account of the State Workmen's Insurance Fund." (1937, P. L. 1566). Only in the event the Second Injury Reserve Account actually *pays* the money is the employer's primary obligation relieved. It is obvious that the account was created for the benefit of the employer and for his relief because of the added burden imposed by section 306 (g). However, if there was not enough money in the account, or if for any reason its liability was contested, the employer is nevertheless liable. This conclusion is supported by the next paragraph of the section which provides the procedure which the *employer* shall follow to obtain the *benefits* of that subsection.

The language of section 306 (g) is admittedly somewhat obscure, but I do not think that it is for the courts to rewrite or ignore the legislation when its intent may be ascertained.

In my judgment, the Supreme Court, in the Rich Hill case, did not invalidate by implication section 306 (g); and even if there were no funds in the Second Injury Reserve Account, the employer's ability to recoup

would merely have been made futile. As said by Mr. Justice HOLMES, in *Commonwealth v. Perry,* 155 Mass. 117, at page 123: "It might be urged, perhaps, that the power to make reasonable laws impliedly prohibits the making of unreasonable ones, and that this law is unreasonable. If I assume that this construction of the constitution is correct, and that, speaking as a political economist, I should agree in condemning the law, still I should not be willing or think myself authorized to overturn legislation on that ground, unless I thought that an honest difference of opinion was impossible, or pretty nearly so."

Therefore, I would affirm the judgment of the court below.

BALDRIGE, J., joins in this dissent.