Robert SCOTT, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (AMES TRUE TEMPER, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 1, 2008.
Decided Sept. 29, 2008.
As amended Oct. 24, 2008.

Ronald T. Tomasko, Harrisburg, for petitioner.

Leah M. Lewis, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Robert Scott (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision of a Workers' Compensation Judge (WCJ) denying his Claim Petition. We reverse and remand for the reasons stated below.

Claimant filed a Claim Petition alleging he sustained a specific loss of his index finger on his right hand. He alleged that this injury occurred on April 27, 2006 while attempting to remove a piece of metal that became stuck in a machine he was using.

Claimant testified that he was involved in the manufacture of wheelbarrow parts and that on the day of his injury, he was operating a machine referred to as a "leg bender."[1] According to Claimant, he fed a coil of steel through the machine and the steel entered a portion of the machine where a "die" goes back and forth that shears the legs to size and makes the bolt and brace holes. He explained the steel caught onto the die and buckled. Claimant attempted to take measures to correct the problem. He stated that there is a guard that shields two sides of the die and runs over top. Claimant asserted that he was trained to reach up underneath the die and pull out any steel that became stuck. He indicated that it was difficult to extract the steel piece and while attempting to do so, the die moved severing his finger. Reproduced Record (R.R.) at 39a, 41a, 43a, 44–46a.

Claimant stated that he placed the machine on "jog" while attempting to remove the steel anticipating that the die would not automatically cycle. He theorized that the machine malfunctioned when the die came down. According to Claimant, he had succeeded in dislodging steel in a similar manner hundreds of times before. He said other workers remove jams in a like fashion. Claimant acknowledged there was a hole cut in the guard and estimated that the hole had been present for a couple of months. Claimant denied that he was the one who cut the hole in the guard. *Id.* at 46–47a, 51–52a, 82a, 84a.

Ames True Temper, Inc. (Employer) presented the testimony of Perry Koppenheffer, press operator, who trained Claimant to work on press 338. He denied Claimant was trained to reach up underneath the machine to unjam it and press the "jog" button while his hand was still in the machine. From his experience, Mr. Koppenheffer did not believe it was possible to get your hand up in the machine in

1. This machine is also referred to as press 338.

the manner described by Claimant while at the same time utilizing your other hand to hit the "jog" button. He stated, however, that it is possible to stick your hand through the hole cut in the guard to reach the jammed steel while simultaneously pressing the "jog" button. According to Mr. Koppenheffer, removing the guards prevents power from going to the press. He agreed that metal gets jammed in the machine from time to time and that it is his understanding that it is the job of the machine operator to remove it. *Id.* at 497a, 500a–501a, 505a, 506a, 509a–510a.

Employer further presented the testimony of Wayne Wright, manufacturing manager, who stated that in the months leading up to the injury, Claimant never indicated there was a problem with the guard. Mr. Wright added that a safety inspection was performed in February of 2006 and there were no problems with the guard. According to Mr. Wright, Claimant did not tell him he was reaching up from under the guard to unjam the steel. Rather, he reached through the hole in the guard. Mr. Wright explained that employees are told not to bypass safety guards. He indicated that either way, there would be a safety violation. He indicated that Claimant should have cut all power to press 338 before trying to correct a malfunction. *Id.* at 422a, 425a, 428a–430a, 436a, 445–446a, 466a.

Employer also presented the testimony of Randy Leigh, maintenance coordinator/supervisor, who agreed that if the machine in question is in "jog" mode, it will only operate if the "jog" button is depressed. He acknowledged that the maintenance department can be called if one is needed to have steel unjammed from the "leg bender." *Id.* at 486a–488a.

■ In a decision circulated June 7, 2007, the WCJ credited Employer's witnesses over the testimony of Claimant. He indicated that Claimant sustained an amputation of his right little finger at the "level of the middle phalanx or knuckle."[2] R.R. at 543a. Nonetheless, the WCJ denied Claimant's Claim Petition concluding that Claimant's injury occurred as a result of a violation of a positive work order, i.e., he failed to follow safety rules in attempting to fix the jam. The WCJ further noted that Claimant was terminated for cause following his work injury as he tested positive for marijuana. The Board affirmed in an opinion dated March 14, 2008. This appeal followed.[3]

■ Claimant argues on appeal that the WCJ erred in finding Employer met its burden of establishing that he was precluded from obtaining benefits based on his violation of a work rule.[4] We agree.

■ In a claim petition, the burden of proving all necessary elements to support

---

2. The WCJ viewed Claimant's hand at the October 13, 2006 hearing. R.R. at 43a.

3. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Shop Vac Corp. v. Workers' Compensation Appeal Board (Thomas)*, 929 A.2d 1236 (Pa.Cmwlth.2007).

4. Claimant argued that Employer failed to meet its burden of proving that he was not entitled to benefits based on his violation of a

positive work order before the Board. Without discussing the law as it relates to positive work orders, the Board disposed of Claimant's appeal on credibility grounds. This argument, however, concerns a question of law to be determined based on the WCJ's findings of fact. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth.1995). It cannot be decided based solely on the WCJ crediting one witness over another. Our review is plenary. *Sekulski v. Workers' Compensation Appeal Board (Indy Assocs.)*, 828 A.2d 14 (Pa.Cmwlth.2003).

an award rests with the claimant. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). The claimant must establish that his injury was sustained during the course and scope of employment and is causally related thereto. *DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Mkts., Inc.)*, 926 A.2d 997 (Pa.Cmwlth.2007).

■ An employer may raise the affirmative defense to a claimant's claim for benefits that his actions violated a positive work order and that therefore his injuries were sustained outside the course and scope of his employment. *Dickey v. Pittsburgh and Lake Erie R.R. Co.*, 297 Pa. 172, 146 A. 543 (1929); *Johnson v. Workers' Compensation Appeal Board (Union Camp Corp.)*, 749 A.2d 1048 (Pa.Cmwlth. 2000). The employer has the burden of proving that the claimant's actions were in violation of a positive work order. *Sysco Food Serv. v. Workers' Compensation Appeal Board (Sebastiano)*, 940 A.2d 1270 (Pa.Cmwlth.2008). The employer must show that the injury was in fact caused by the violation of the work rule, the employee actually knew of the order or rule, and the rule implicated an activity not connected with the employee's work duties. *Asplundh Tree Expert Co. v. Workers' Compensation Appeal Board (Humphrey)*, 852 A.2d 459 (Pa.Cmwlth.2004); *Nevin Trucking*, 667 A.2d at 268. Denying benefits based on the violation of a positive work order is a very rare exception to the broad general principle that all injuries sustained by an employee arising in the course of his employment and causally related thereto are compensable. *Camino v. Workers' Compensation Appeal Board (City Mission)*, 796 A.2d 412 (Pa.Cmwlth.2002). Indeed, the claimant must have been involved in an activity at the time of his injury so disconnected with his regular work duties as to be considered, with respect to the employer, nothing more than a "stranger" or "trespasser." *Id.* at 418.

■ Upon review of the aforementioned, we agree with Claimant that the WCJ erred in denying his Claim Petition. There is no dispute that a portion of Claimant's finger was cut off while he was attempting to dislodge a piece of steel from press 338. The dispute concerns whether Employer established Claimant sustained his injury while violating a positive work order removing himself from the course and scope of his employment. Consistent with *Nevin Trucking* and *Humphrey*, Employer must show that the injury was caused by the violation of the work rule, the employee actually knew of the rule, *and* the rule implicated an activity not connected with the employee's work duties. It is this third element that cannot be met. Claimant's job was to operate the "leg bender" machine. Employer's witness, Perry Koppenheffer, whom the WCJ credited, agreed that on occasion metal does get jammed in the machine and that it is the duty of the machine operator to remove it. Wayne Wright, whose testimony was also credited by the WCJ, noted that Claimant violated safety procedures in the moments leading up to his injury but proffered that there was a proper method Claimant could have followed to unjam the press. Specifically, he indicated Claimant could have completely shut the power off to the machine. Thus, we cannot say that in attempting to remove the steel that had become stuck from press 338 was an activity disconnected from Claimant's work duties so as to remove him from the course and scope of his employment precluding an entitlement to benefits. It is true that Mr. Leigh credibly testified that maintenance was available to remove any jammed material from the machine. He did not suggest, however, that it was mandatory that

maintenance be called in the event of a jam. Thus, claimant was not involved in an activity in which he would be considered nothing more than a "stranger" or "trespasser." Claimant was entitled to benefits for his injury and the WCJ erred in denying his Claim Petition.

Employer nonetheless contends it established that Claimant's injury occurred while engaged in an activity so removed from his work duties so as to render him a "stranger" or a "trespasser." In making this argument, Employer contends Claimant bypassed safety guards and never reported the holes cut in the guards. It contends that facts in this case are analogous to the facts in *Nevin Trucking* where benefits were denied in light of a violation of positive work order. In response, Claimant asserts that this case is more akin to *Humphrey* where benefits were awarded in spite of a violation of a positive work order.

The claimant, in *Nevin Trucking,* worked for the employer as a truck driver. He filed a claim petition alleging he sustained an injury in the course and scope of his employment while he was trying to fix a tire that had come off his trailer. The employer filed a responsive answer alleging that the claimant's injury occurred while he was engaged in a strictly prohibited activity. The WCJ granted the claimant's petition and the Board affirmed the same. This Court noted that the employer had a specific work rule prohibiting a truck driver from fixing a tire and that money was provided to hire a professional to do the job. We further found the claimant's injury was caused by his violation of the work rule and that claimant knew of the work rule. Moreover we indicated that the changing of the tire was not part of the claimant's work duties and that the claimant had no duty to change the tire.

Consequently, this court reversed the grant of the claim petition.

In *Humphrey,* the claimant was employed by the employer as a tree trimmer. The claimant went through safety training with the employer and was familiar with the employer's "ground-to-sky" policy. He understood the policy to mean that an employee must put his safety line into a tree first, find a crotch in which to put the line, and secure himself. He sustained injuries to his right arm and hand when he fell off of a tree. At the time of his accident, the claimant did not have his safety line in the crotch of a tree. He filed a claim petition, the WCJ granted the petition, and the Board affirmed. On appeal, we held that the claimant was required by the nature of his job as a tree trimmer to climb trees and that although he violated the employer's policy requiring him to be tied into a tree at all times, his violation was not so disconnected from his duties as to render him a stranger or a trespasser. Consequently, we affirmed the Board.

In deciding *Humphrey,* we relied on the following hypothetical situation from the seminal case of *Dickey:*

> An engineer with a red signal against him runs his engine past it and is killed; the violation of the rule and the order, while wilful, is a compensable negligent act. On the other hand, a brakeman who has no duty to perform on the engine gets on board, starts it, runs by the same block and is killed ... he cannot recover.

*Dickey,* 297 Pa. at 175, 146 A. at 544–5.

We agree with Claimant that this case is more analogous to the facts in *Humphrey* than the facts in *Nevin Trucking.* Claimant was responsible for operating press 338 and making legs for wheelbarrows. While he may have violated a work rule in trying to dislodge a piece of steel that got

stuck in the machine, the evidence of record establishes that he was permitted to unjam the same so long as he followed proper procedure in order to maintain production. This is similar to scenario in *Humphrey* where the claimant failed to secure his safety line in violation of a work rule, but because he was attempting to trim a tree as per his job duties, he was nonetheless entitled to benefits. In both the case before us and *Humphrey,* the injured worker was engaged in an activity that was a part of his work duties at the time of injury even though there specific actions were in violation of a direct order. Much like the engineer in the hypothetical example in *Dickey,* he is nonetheless entitled to benefits. The claimant in *Nevin Trucking,* however, had no duty to fix the tire on the truck. He was responsible for driving the truck only. Much like the brakeman in the hypothetical posed in *Dickey,* the claimant had no reason to be in a situation where he was fixing the tire and, as such, the injuries he sustained were incurred while outside the course and scope of his employment. We must reject Employer's argument.

As noted above, Claimant's claim is for specific loss benefits, not indemnity benefits. Section 306(c) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513, provides, in pertinent part:

> For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:
>
> . . .
>
> (13) For the loss of a fourth finger, commonly called little finger, sixty-six and two-thirds per centum of wages during twenty-eight weeks.

When a claimant's injury results in a specific loss, specific loss benefits are the exclusive remedy. *Allegheny Lud-lum Steel Corp. v. Workers' Compensation Appeal Board (Malobicky),* 753 A.2d 330 (Pa.Cmwlth.2000). Specific loss benefits are compensation for the damage resulting from the loss of the members there named, without regard to one's ability to labor or their loss of earning power. *Lente v. Luci,* 275 Pa. 217, 119 A. 132 (1922). *See also Estate of Rosalie Harris v. Workers' Compensation Appeal Board (Sunoco, Inc.),* 845 A.2d 239 (Pa.Cmwlth.2004). Consequently, while Claimant testified positive for marijuana and was discharged from his employment following his work injury, this does not preclude an award of specific loss benefits. Such a fact can only be used to attempt to establish Claimant was not entitled to indemnity benefits. *See generally Edwards v. Workers' Compensation Appeal Board (Sear's Logistic Serv.),* 770 A.2d 805 (Pa.Cmwlth.2001) (holding a claimant's benefits may be suspended in the context of a claim petition if he is terminated for reasons other than his work injury). The WCJ found Claimant's amputation was just below the proximal interphalangeal joint of the little finger. As such, Claimant is entitled to twenty-eight weeks of benefits for the specific loss of a finger consistent with the above provisions of Section 306 of the Act.

As a result of our ruling, we must reverse the order of the Board. The WCJ erred in denying Claimant's Claim Petition. We remand this matter to the Board for further remand to the WCJ for an assessment of costs, including counsel fees, if any, as well as an assessment of benefits for an appropriate healing period.

## ORDER

AND NOW, this 29th day of September 2008, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed. Claimant's Claim Petition is granted. This matter is

remanded consistent with the foregoing opinion.

Jurisdiction relinquished.