## Porto, Appellant, v. Philadelphia and Reading Coal and Iron Company.

Argued October 24, 1939.

Before Cunningham, Stadtfeld, Parker and Rhodes, JJ.

H. F. Bonno, for appellant.

Penrose Hertzler, with him J. A. Welsh and E. Mac Troutman, for appellee.

Opinion by Cunningham, J., December 13, 1939:

One of the technical phases of this workmen's compensation case was before this court in 1936 upon the appeal of the defendant company and was decided against it in an opinion filed December 21, 1936, by Rhodes, J., reported in 124 Pa. Superior Ct. 431, 188 A. 599. The rather involved history of the case is stated in detail in that opinion and, for present purposes, may be thus summarized:

John Porto, appellee in the former appeal but appellant herein, suffered an accidental injury to his left foot, during the course of his employment with the defendant, on March 23, 1931, and an open agreement for compensation for disability undetermined in extent was executed and approved.

On August 25, 1933, the employer, being of opinion that appellant's injury had resolved, itself into the permanent loss of the use of his foot, petitioned for a

modification of the existing agreement into one for the permanent loss of the use of the member, in accordance with the provisions of Section 306(c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended April 13, 1927, P. L. 186, 77 PS §513. On January 15, 1934, Referee Hess made a finding that appellant's "disability was confined to the loss of the industrial use of the left foot," and modified the agreement as prayed for, thereby making, for all practical purposes, an award under Section 306(c).

Upon appellant's appeal to it, the board, on March 13, 1934, affirmed the action of the referee, "without prejudice to the right of the claimant to present a petition for a rehearing within a period of one year ...... upon the submission of proof that he has regained in part the industrial use of the left foot."

Between the dates of the action of the referee and the affirmance by the board, viz., on February 13, 1934, the period of 150 weeks, prescribed by Section 306(c) for the permanent loss of the use of a foot, expired. Appellant has been paid compensation at the maximum rate for that full period in the total amount of $2,250.

Instead of availing himself of the right to file a petition for a rehearing, as indicated in the order of the board of March 13, 1934, and although the definite period specified in Section 306(c) had expired, appellant instituted on April 2, 1934, an abortive proceeding under the second paragraph of Section 413, as amended April 13, 1927, P. L. 186, 77 PS §772, for a review of the agreement as modified. In its course, Referee Lewis found on June 20, 1934, that appellant's disability was confined to the loss of the industrial use of his left foot; this finding was affirmed by the board on January 9, 1935, but the board also held the petition was barred by the limitation in the section. No appeal was taken from that order.

Appellant, however, did file on March 6, 1935, and within one year from the board's order of March 13,

1934, a petition for a rehearing of his appeal from the action of Referee Hess. This petition was filed under Section 426, as amended April 13, 1927, P. L. 186, 77 PS §871, and was the basis of the proceedings which culminated in our former opinion and order. The employer contended its presentation and consideration was barred because no appeal had been taken from the order of the board of January 9, 1935, affirming the action of Referee Lewis. On April 16, 1935, the board erroneously dismissed appellant's petition for a rehearing upon that technical ground; he appealed to the common pleas; that tribunal reversed the board and directed that the record be returned to the board for a rehearing; the employer appealed to this court from that order. For the reasons fully stated in our opinion of December 21, 1936, we affirmed the order of the common pleas.

In concluding our opinion we said: "As the questions raised on this appeal relate entirely to procedure, we pass no judgment on the merits of the case. Upon a rehearing the claimant will be obliged to show, if possible, that there has been a change in his condition as alleged in his petition which, with the affidavit of the physician attached thereto, sets forth such facts as necessitate the taking of testimony. This is true notwithstanding the fact that at the two previous hearings the testimony fully supported the findings of the referees and board that the claimant's disability then consisted only of the loss of the industrial use of his left foot."

Proceeding to the consideration of the history of the case subsequent to the return of the record to the board for a rehearing, we note the petition of March 6, 1935, for such rehearing alleges that appellant had at that time "partially regained the industrial use of [his] left foot." Under date of April 5, 1937, the board granted appellant's petition for a rehearing and remanded the record to Referee Schrager for further hear-

ing and determination not inconsistent with the opinion of the court below and of this court.

Thereupon, the employer obtained an order that appellant submit to a physical examination by Drs. C. R. Gennaria, H. H. Hirshland and J. R. Martin, (who had testified before Referee Lewis on June 20, 1934,) together with such physicians as appellant might choose.

The rehearing was proceeded with by Referee Schrager on May 28, 1937. It is apparent that the referee misconceived the issue before him. He seems to have been under the impression that the question was whether appellant, subsequent to the expiration, on February 13, 1934, of the period of 150 weeks, fixed by Section 306(c) and for which he had been paid, still had a partial disability, and if so, the extent thereof. This erroneous conception of the issue is attributable, in some degree at least, to appellant's petition for the rehearing. It was badly drawn and is entitled an appeal instead of a petition for a rehearing, but it expressly referred to Section 426. In the body of the petition appellant says he is appealing from the "disallowance of compensation" by the referee and the affirmance thereof by the board. There had been no disallowance of compensation. The action of Referee Hess on January 15, 1934, was a modification of the original agreement into one under Section 306(c) for the permanent loss of the use of appellant's foot. Appellant evidently sought to have a supplemental award for partial disability, under 306(b), added to the total amount of compensation already paid him for the permanent loss of the use of his foot. As indicated in our former opinion, he had the burden of proving the existence of some physical condition which would entitle him to additional compensation under the provisions of the statute.

The referee seems to have been under the impression that if appellant was suffering any disability at the end of the period of 150 weeks fixed by paragraph (c), he

would be entitled to an award of additional compensation for such disability. It having been determined by two referees, and affirmed by the board, that appellant's injury had resolved itself into the permanent loss of the use of his foot, he would be required, in order to obtain any additional compensation, to show that by reason of an injury to some organ or portion of his body, other than his foot, he was suffering a disability separate, apart, and distinct from the disability normally flowing from the loss of the use of his foot. It has been repeatedly held that the amount of compensation specified in paragraph (c) to be paid for the permanent injuries therein enumerated "includes all incapacity to labor that may be connected therewith, whether it be total, partial or no incapacity at all": *Lente v. Luci,* 275 Pa. 217, 119 A. 132, and the kindred cases cited and reviewed in *McClelland v. The Baltimore & Ohio R. R. Co.,* 137 Pa. Superior Ct. 158, 8 A. 2d 498.

In *Lente v. Luci,* supra, our Supreme Court distinctly said: "But, in these cases, where it is claimed that some other part of the body is affected, it must definitely and positively appear that it is so affected, as a direct result of the permanent injury; the causal connection must be complete, and, further, the disability must be separate and distinct from that which normally follows an injury under paragraph (c), and must endure beyond the time therein mentioned."

Proceeding upon the erroneous theory to which we have referred, and because Drs. Martin and Scicchitano testified appellant had a 30% partial disability, Referee Schrager made a finding to the effect that by reason of an operation performed on appellant's foot in January, 1933, "in the nature of a bone block" there had been an improvement in the condition of his foot to the extent that he "was able to walk about without the aid of crutches," but that since February 13, 1934,— the end of the period of 150 weeks for which he had been

paid—he "suffered a partial disability which results in a loss of earning power of 20%, or a monetary loss of $5 per week." An award was accordingly made directing the employer to pay appellant "$3.25 per week from February 13, 1934, to December 29, 1936, a period of 150 weeks." In effect, the referee added an additional award, under paragraph (b), for 150 weeks, thereby extending payment of compensation to the end of the maximum partial disability period.

There was not a particle of evidence that any portion of appellant's body other than his left foot had been affected in any way and it was therefore entirely immaterial whether he had any disability subsequent to February 13, 1934. He had already been paid for "all disability resulting from [his] permanent injury."

The theory of counsel for appellant, as advanced in his brief, is that the evidence shows appellant "has not suffered the industrial loss of the use of his left foot." Even if the referee had made such a finding it would not support the award. If appellant's theory (that subsequent to the adjudications of the permanent loss of the use of his foot it had developed that those adjudications were wrong because its use was never permanently lost) had been sustained by competent evidence, it would follow that the payments already received had been mistakenly made. It would then have been the duty of the referee to re-examine the case from the beginning and determine when appellant's total disability became partial and the extent of the latter, and to ascertain whether he had not already been fully paid. Such a readjustment is not what appellant wants and, for reasons about to be stated, speculation upon its result would be futile.

Upon the employer's appeal from the award of the referee, the board in an opinion by Chairman Ullman set aside the findings of fact and award and, as the final fact-finding tribunal, substituted a finding reading:

"As of June 20, 1934, Referee Lewis adjudicated that the claimant had as of that date lost the industrial use of his foot. The great preponderance of the evidence is to the effect that his condition today is approximately and substantially the same that it was as of that date, and the board, therefore, so finds as a fact."

Our sole duty is to ascertain whether there is competent evidence upon this record sustaining that finding. An examination of the testimony taken by Referee Schrager discloses ample evidence that the condition of appellant's foot was at the time of hearing substantially the same as when it was found by Referee Hess on January 15, 1934, and Referee Lewis on June 20, 1934, that his injury had resolved itself into the permanent loss of its use.

Dr. W. V. Dzurek testified the claimant had permanently lost the industrial use of his foot. Dr. C. R. Gennaria, who was the attending physician of appellant and had observed him over a long period of time, testified in part as follows: "Q. Doctor, will you tell us whether or not you note any change in his condition so far as his injured foot is concerned, since the last time you testified? A. I can see no change in his foot. ...... Q. When did you testify last? A. June 20, 1934. Q. See this claimant walk at that time? A. Yes. Q. Walk the same way? A. Yes, I am sure he did." Dr. Harold Hirshland, who also had testified at the previous hearing, stated he had examined appellant the day before the hearing and testified: "Q. Will you tell the referee whether you noticed any change in his condition as you found it last night than what you testified in June 1934? A. Not the slightest change. Q. Are you still of the opinion he has lost the industrial use of that foot? A. I am." Dr. James R. Martin, who had treated appellant and testified on previous occasions, stated: "Q. You testified in this case in December 1933 and June 1934? A. Yes. Q. Will you tell us whether or not there was

any change in the condition of that foot since the time you last testified? A. No change."

Opposed to this evidence was the testimony of Drs. William B. Lewis and R. R. Scicchitano, to the effect that the use of the foot had not been permanently lost, but appellant was still partially disabled.

An excerpt from the testimony of Dr. Scicchitano reads: "Q. What improvement did you notice in his foot since the last hearing, June, 1934? A. That the man has more assurance in himself which formerly he did not have. Before he was afraid. Now he has a more steady gait, can feel himself about with it and can almost climb steep grades with the foot and does not drag the toes ordinarily like a person would with complete drop foot. Q. You have seen him walk? A. I have. He does not drag the toes. Q. Doctor, in your opinion has he suffered the complete loss of the industrial use of his foot? A. I do not think so. Q. What is your opinion as to his impairment? A. I think the motion is impaired to above a thirty percent earning power in the foot."

The finding of the board upon the issue of fact thus raised, supported as it is by competent evidence, is binding upon the courts.

In the course of its opinion, the board, after reviewing the evidence, demonstrated that the theory upon which the referee's award was based was untenable and concluded with the observation:

"It seems to the board, therefore, that the claimant has entirely failed to show either by a preponderance of the evidence, or by the best evidence, that his condition is today other than it was on June 20, 1934. We again state that until such a change is proved, we are precluded from going further in our consideration of the case, for as was clearly pointed out in the opinion of the Superior Court, the gravamen of the claimant's petition is that his condition is now other than when it was last adjudicated by the compensation authorities."

The appellant's petition was accordingly dismissed and he appealed to the court below. That tribunal, in an opinion dated December 12, 1938, overruled his exceptions to the action of the board and dismissed his appeal, thereby in effect entering judgment for the employer. In our opinion, the court below was fully justified in affirming the action of the board. This appellant has been paid all the compensation to which he is entitled under the evidence upon this record and his present appeal is without merit.

Judgment affirmed.