Bordick *v.* John Conlon Coal Company, Appellant.

Argued March 3, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Leo W. White,* for appellant.

**524**

*E. C. Marianelli,* for appellee.

OPINION BY CUNNINGHAM, J., April 18, 1941:

The basis of the controversy in this workmen's compensation case was an attempt by the claimant, after he had been paid the full amount of a judgment— $1338.11—entered upon a litigated award of compensation under Section 306 (c) of our Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of April 13, 1927, P. L. 186, 77 PS §513, for permanent injuries accidentally sustained September 5, 1935, and consisting of the loss of his right index finger, the permanent loss of the use of his right thumb and serious and permanent disfigurement of his face, to tack on to that award an additional award, under Section 306 (b), for a partial disability from which he was suffering in February, 1939.

Neither the compensation board nor the court below seems to have realized that under the principles announced by our Supreme Court in *Lente v. Luci,* 275 Pa. 217, 119 A. 132, the only possible basis for such an award would be clear and substantial proof by the claimant that he had a partial disability separate, apart and distinct from the disability normally incident to the loss of the members above mentioned, and which was attributable to the destruction or injury of other portions or organs of his body as a direct result of the accident sustained in the course of his employment. It would not be sufficient for claimant to show merely that he was suffering a partial disability which affected his earning power at the time of the application with which we are now concerned. He had already been paid "for all disability resulting from [the] permanent injuries" upon which the prior award under Section 306 (c) was based. It has been repeatedly held that the amounts specified in paragraph 306 (c) to be paid for the permanent injuries therein enumerated "include all incapacity to labor that may be connected therewith,

whether it be total, partial, or no incapacity at all."
Failure to observe the distinction to which we have
referred has resulted in more or less confusion in this
record, but the essential features of the case may be
thus outlined.

During the course of his employment as a miner's
laborer with the defendant company on September 5,
1935, claimant, along with his miner, was engaged in
tamping a hole which they had drilled and charged
with dynamite. As a result of a premature explosion
claimant suffered injuries thus described in his claim
petition: "Injury to right hand, arm and face, neces-
sitating amputation of right index finger. Right thumb
injured. Right side of face bears marks of permanent
disfigurement. Injuries caused by a blast." For some
unexplained reason, the disposition of the claim was
delayed until December 23, 1936, upon which date the
referee entered a disallowance of compensation upon
the ground that claimant was tamping the hole with an
iron pipe in violation of the "Anthracite Mining Laws
of Pennsylvania."

Upon claimant's appeal to it, the board held the em-
ployer had not shown by the required preponderance
of evidence that claimant had been using a forbidden
instrument in charging the hole for blasting and re-
manded the record to the referee for the purpose of
ascertaining the extent of his injuries. After a fur-
ther hearing the referee found the claimant had suffered
the loss of his right index finger, which was amputated,
the loss of the use of his right thumb, and permanent
disfigurement of his head and face. An award was
accordingly made on March 14, 1938, of compensation,
at the rate of $9.94 a week, for the aggregate period of
120 weeks beginning September 12, 1935,—thirty-five
weeks for the loss of the finger, sixty for the thumb,
and twenty-five for disfigurement—which period had
already expired. Upon the employer's appeal this
award was affirmed by the board and upon its further

appeal to the common pleas its exceptions were dismissed and judgment was entered upon the award in favor of the claimant on October 24, 1938, which judgment was paid the following month.

Clearly, this was a final adjudication of every matter which was litigated or involved in the issue which arose under the claim petition and the employer's answer thereto. If the findings of the referee did not include every permanent injury sustained by the claimant, compensable under Section 306 (c), or if there was any error in the calculation of the amount of compensation payable, it was the plain duty of the claimant to appeal from the award of the referee to the board within the time fixed by the statute, or at least petition the board for a rehearing, under Section 426, before the common pleas took "final action" upon the appeal of the employer. He did neither.

On February 10, 1939, after the expiration of the period of 120 weeks but within the 300 week period following the accident, claimant filed a petition entitled, "Petition for Modification of Award on Ground of Changed Disability," and reading: "Frank Bordick, an employe, a party to Claim Petition No. A-19324, hereby petitions your Honorable Board to modify the said award and as ground for the petition alleges that the disability of Frank Bordick entitled to compensation under the said award has increased as follows: The claimant's disability has increased in that he has become partially disabled as a result of the injuries to his right arm sustained on September 5, 1935. And in support thereof the following facts are stated: The claimant has sustained a loss of earning power as a result of said increased disability."

This petition is manifestly an application under the second paragraph of Section 413 for a modification of the award of March 14, 1938, upon the ground of a change in the claimant's physical condition resulting in an increase of disability. It may be noted in con-

nection with Section 413, which deals primarily with matters of procedure, that at the date the petition was filed the Act of June 4, 1937, P. L. 1552, 77 PS §772, effective January 1, 1938, was in force, which act omitted from the paragraph in question the provision to the effect that awards made for a definite period may be reviewed only during the time such an award has to run, and as the petition was filed within one year after the payment of the judgment we think the board had jurisdiction to dispose of the petition upon its merits.

The defendant employer in its answer denied there had been any increase in disability and averred claimant had been paid in full for his permanent injuries. At the hearing before the referee the testimony of claimant, and of Dr. I. C. Morgan called by him, was taken. Dr. Morgan, who had never examined claimant until the day of the hearing, testified in substance with respect to claimant's right arm and hand that his examination disclosed the forearm was somewhat atrophied and had a large scar upon it; that there was some limitation of the wrist and a limitation of about 60% in the flexion of the remaining three fingers; and that in his opinion claimant was 50% disabled.

Such testimony would have been material at the hearing upon the extent of claimant's permanent injuries and in the determination of the number of weeks during which he was entitled to receive compensation under Section 306(c), but it had no bearing upon the question whether or not there had been any subsequent increase in his disability. Upon that question claimant's own testimony seems to be in direct contradiction of the averments of his petition for additional compensation. During his cross-examination he testified: "Q. How long after your injury, September 5, 1935, did you begin to notice anything wrong with the motion of your hand or strength in your fingers or your wrist or your forearm? A. I knew that right along. Q. You knew that all the time? A. Yes, sir. Q. Did you know it

when you filed your petition in December, 1935? A. Well, I knew it but I didn't say anything because I didn't know what was going to happen to the compensation. I thought they would take care of it......Q. You had the same complaint you have now about your arm, you had from the time you filed your first claim? A. Yes, sir. Q. And it hasn't improved any? A. No, sir. Q. And it was the same when you received your compensation on that claim? A. It was the same."

Ignoring the issue raised by the petition and answer before him, as well as the conclusive effect of the judgment of October 24, 1938, the referee made a finding that claimant had suffered "the loss of the industrial use of [his] right arm," and made an award under Section 306(c) of 95 additional weeks, or a total of 215 weeks. The board, pointing out, inter alia, that the record contained "no testimony of any increase of disability since claimant filed his claim petition," reversed the action of the referee and dismissed the petition for additional compensation. In considering claimant's appeal to it, the common pleas said: "The contention of the claimant is that although technically the petition prayed for a modification of the award upon the allegation that his disability had increased, (which was not established) that the petition should have been treated as a petition for additional compensation inasmuch as claimant was suffering from a permanent partial disability."

After further stating the referee "might have been warranted in finding that claimant suffered permanent partial disability," the court below, by an order dated February 6, 1940, remitted the record for "distinct findings as to the claimant's present condition." The present appeal is by the employer from that order. No question has been raised by claimant as to the appealability of the order.

The error of the court below, as we view the case, consists in failing to note that the question involved

is not whether claimant is suffering 'from a *permanent partial disability,* or the extent thereof. Any employee who has lost the index finger and thumb of his right hand naturally has some disability. But if, as here, he has been paid the compensation fixed by Section 306(c) for the loss of those members, he is not entitled, under *Lente v. Luci,* supra, to an additional award under Section 306(b) for such partial disability, unless he has shown by clear and substantial evidence that the disability for which he seeks additional compensation is a disability separate, apart and distinct from that which normally flows from the loss of the members, and is directly attributable to the destruction or injury of some other portions or organs of his body through the accident. The legislature has expressly provided that the compensation fixed by Section 306(c) shall cover "all disability" resulting from the permanent injuries therein described.

We find no evidence upon this record which would sustain an additional award of compensation under Section 306(b), and, of course, the final judgment of October 24, 1938, cannot now be opened to include therein any additional permanent injuries. Compare *Ernst v. Sassaman,* 117 Pa. Superior Ct. 353, 178 'A. 317; *McClelland v. B. & O. R. R. Co.,* 137 Pa. Superior Ct. 158, 8 A. 2d 498; *Porto v. Phila. & Reading C. & I. Co.* 137 Pa. Superior Ct. 590, 10 A. 2d 29; *Stohan v. Rockhill Coal & Iron Co.,* 140 Pa. Superior Ct. '146, 14 A. 2d 229.

Our conclusion from an examination of the entire record is that claimant's petition for additional compensation should have been dismissed upon its merits.

Order of February 6, 1940, reversed and petition dismissed.