Opinion ry
 

 Dithrich, J.,
 

 Claimant’s hand was crushed by a blow from a pressure hammer on May 24, 1945, in the course of his employment as a mechanic or repairman for defendant. The third metacarpal of his left hand sustained a compound fracture. He ivas hospitalized and treated, and the parties entered into a compensation agreement calling for indefinite payment of $18 a week. About a year later the employer filed a petition for modification, alleging that the injury was then limited to loss of the middle finger. After hearing, the referee found claimant’s disability to be a 15 per cent partial one. Claimant appealed, but—as he had gone back to work for the employer at an equal or better Avage—the parties agreed to a suspension of payments until loss of earning power could be shown. Claimant was later laid off and on October 9, 1947, filed a petition for reinstatement. The referee heard the claimant and a medical Avitness for each party, found that claimant’s disability had become a 25 per cent partial one, and ordered reinstatement. On appeal the Board reversed the referee and concluded that the injury had resolved itself to the loss of the middle finger and that there was no other separate and distinct disability. On appeal to the Allegheny County Court the Board was affirmed. Claimant then brought this appeal.
 

 The question is: Does claimant’s condition amount to more than the loss of his finger so as to qualify him
 
 *201
 
 for compensation under §308 (b) rather than §306 (c)?
 

 These sections provide, in part: “Section 308 (b) For disability partial in character (except the particular cases mentioned in clause (c)) sixty-six and two thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine, and the earning power of the employe thereafter; ... (c) For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows: . . . For the loss of a second finger, sixty-six and two-thirds per centum of wages during thirty weeks. . . . Permanent loss of the use of a . . . finger, . . . shall be considered as the equivalent of the loss of such . . . finger, . . .”: Workmen’s Compensation Act of June 2, 1915, P. L. 736, as reenacted and amended, 77 PS §§512, 513.
 

 When the metacarpal healed there was a good, solid union. About one-fourth inch shortening and some lateral displacement of the bone resulted. The adjacent metacarpophalangeal joint is partially ankylosed and that seems to be what is bothering the claimant. It is agreed that the finger has 90 degrees of flexion. Normal flexion is 90 degrees for each joint of a finger. Since some impairment of flexion seems to be admitted by all parties, it may be that the 90 degrees refers to the combined flexion of all of the finger joints. Due to the interrelation of the normal mechanical aspects of finger flexion the stiffness of this finger is reflected in the other fingers by a limitation of flexion and weakening of gripping strength. Just how much the rest of the fingers are affected is not entirely clear from the record.
 

 Claimant’s theory is based on this line of reasoning: The injury was to a bone of the hand. The middle finger is impaired
 
 ancl
 
 the grip is weakened. Therefore the hand injury has caused a partial disability which is compensaable under §306 (b). The Board’s counter-theory is:
 
 *202
 
 The hand injury has fully healed leaving the middle finger somewhat stiffened. The impaired grip is not due to any organic impairment of the remaining fingers but solely to the stiffness of that finger. Therefore compensation is due only under §306 (c) and only for the loss of the middle finger.
 

 To accept claimant’s theory would require, at least, a conclusion that he was worse off with this finger than without it. That is often the case. Dr. Earl D. McBride in his book, Disability Evaluation,
 
 [1]
 
 suggests that amputation of a middle or ring finger which is stiffened in extension is frequently the preferred treatment. Yet claimant’s own medical witness testified that he would hesitate to recommend amputation.
 

 In
 
 Pellegrino v. Consumers Mining Co.,
 
 162 Pa. Superior Ct. 119, 56 A. 2d 267, a similar injury was considered. There claimant suffered amputation of the index finger and stiffening of the middle finger which affected the grip of the hand as a whole. The referee found 20 per cent partial disability under §306 (b). The Board reversed and awarded compensation for the loss of the two fingers under §306 (c), finding that the disability to the ring and little fingers was a result of the injury to the second finger and
 
 failure to have it amputated.
 
 This Court affirmed the Board, citing
 
 Bordick v. John Condon Coal Co.,
 
 144 Pa. Superior Ct. 522, 529, 19 A. 2d 536, and
 
 Hayden v. Stony Spring Coal
 
 
 *203
 

 Co.,
 
 157 Pa. Superior Ct. 423, 43 A. 2d 384, as authority for the proposition that §306 (c) determines the compensation to be paid for specific losses of members and all injury or disability directly resulting from such loss.
 

 In the instant case the Board found “that claimant has no disability separate and distinct from the specific loss.” Since this finding is based on competent medical testimony, we are bound by it, as was the learned court below.
 

 Judgment affirmed.
 

 [1]
 

 McBride, Disability Evaluation (4th Ed., 1948)
 

 P. 204: “One finger that is straight and stiff will be greatly in the way of grasping objects with tbe other fingers. It is for this reason that a severely flexed or extended finger often deserves the consideration of amputation.”
 

 P. 212: “When one finger is fixed in full extension or full flexion the person usually prefers amputation. ... It is easier to overcome the handicap of fixed extension in the first finger than in the second or third fingers because a finger that stands straight out between the other fingers cannot be gotten out of the way in closed fist action.”