603 A.2d 266

**SCHOOL DISTRICT OF PHILADELPHIA, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (PITTMAN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April, 12, 1991.

Decided Jan. 30, 1992.

William C. McGovern, for petitioner.

Leon W. Tucker, for respondent.

Before COLINS and KELLEY, JJ., and BLATT, Senior Judge.

BLATT, Senior Judge.

The School District of Philadelphia (employer) petitions for review of a decision and order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision dismissing the employer's petition for termination, amended to a petition for modification, and reinstat-

ing total disability compensation to Evelyn Pittman (claimant).

The facts of this case are not in dispute. The claimant worked as a vocational sewing teacher for the employer, and during the course of her employment, she accidentally severed her left index finger in a cloth-cutting machine. Thereafter, she received total disability compensation pursuant to Section 306(a) of The Pennsylvania Workmen's Compensation Act (Act).[1] The employer subsequently filed a termination petition which it later amended to aver that the claimant's injury had resolved itself into a specific loss of use of her left index finger so that her entitlement to benefits was limited to 50 weeks as specified under Section 306(c)(10) of the Act, *as amended*, 77 P.S. § 513(10).

Following several hearings, the referee concluded that the claimant's injury had resolved itself into a specific loss of use of her left index finger. He then granted the employer's petition to terminate because the compensation the employer had already paid to the claimant exceeded that to which she was entitled under Section 306(c)(10) of the Act.

On appeal, the Board reversed the decision of the referee on the ground that the employer had failed, as a matter of law, to meet its burden of proving that the claimant's specific loss was limited to her left index finger. The Board then remanded to the referee to determine whether or not the employer's petition to terminate should be granted on the basis of a greater specific loss.[2] The employer peti-

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 511.

2. The Board's opinion states:
   We remand however for the Referee to make further Findings of Fact as to whether the entire hand or portions thereof are lost for all practical intents and purposes. In the event either the hand or other fingers are not lost for all practical intents and purposes, then of course the claimant is entitled to continue to receive total disability payments. That is to say, the Referee must determine on remand whether there is a specific loss of something greater than the finger and if not, the claimant then remains under the law totally disabled.
   Board's Opinion, March 28, 1986 at 3.

tioned this Court for review of the Board's remand order, and in an unreported opinion, we quashed the appeal as interlocutory without reaching the merits of the case. *School District of Philadelphia v. Workmen's Compensation Appeal Board (Pittman)* (No. 1245 C.D.1986, filed March 31, 1987).

On remand, the referee again found that the claimant did not sustain any loss of use for all practical intents and purposes beyond her left index finger. Nevertheless, he concluded that pursuant to the remand order of the Board, the claimant must be deemed to be totally disabled. He, thus, dismissed the employer's petition for termination and reinstated the claimant's total disability compensation. It is from the order of the Board affirming the decision of the referee on remand that the employer appeals to this Court.[3]

On appeal, the employer asserts that the Board improperly substituted its own view of the medical evidence of record for that of the referee, and thus erred in concluding that the claimant suffered an injury separate and apart from the injury to her left index finger. The claimant contends that the condition of her left hand constitutes a destruction, derangement, or deficiency of another part of her body that did not follow as a normal consequence of the specific loss of use of her left index finger, and thus the Board properly dismissed the employer's petition for termination and reinstated her total disability compensation.

Where, as here, the employer alleges that the claimant's injury is compensable as a specific loss rather than a total disability, the employer must show that the claimant suffers a permanent loss of use of the injured body part for all practical intents and purposes. *Linkiewicz v. Workmen's Compensation Appeal Board (Pullman Standard)*, 132 Pa. Commonwealth Ct. 472, 573 A.2d 265

---

3. Our scope of review is limited to determining whether the employer's constitutional rights were violated, whether an error of law was committed and whether necessary factual findings are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Commonwealth Ct. 436, 550 A.2d 1364 (1988).

(1990). This question is one of fact to be resolved by the referee. *Id.*, 132 Pa.Commonwealth Ct. at 474–75, 573 A.2d at 266.

In addition, we note that in cases of specific loss claims, the well-established rule is that an employee who sustains an injury adjudged compensable under Section 306(c) of the Act is not entitled to additional compensation even though he may be totally disabled by his permanent injury. *Rowan v. Workmen's Compensation Appeal Board*, 58 Pa. Commonwealth Ct. 56, 426 A.2d 1304 (1981). The exception to the general rule is that a claimant is entitled to total disability benefits under Section 306(a), in addition to benefits for specific loss under Section 306(c), where there is a destruction, derangement, or deficiency in the organs of the other parts of the body. *Truck Lubricating & Washing Co. v. Workmen's Compensation Appeal Board*, 54 Pa. Commonwealth Ct. 495, 421 A.2d 1251 (1980). Thus, if a specific loss injury results in a disability which is separate and distinct from that which normally follows such an injury, and which is the direct result of the injury, then benefits for total disability are allowed in addition to benefits for specific loss. *Lente v. Luci*, 275 Pa. 217, 119 A. 132 (1922). In the *Lente* case, the Supreme Court held that the destruction of other body parts, which a claimant must show, does not include pain, annoyance, inconvenience, disability to work, or anything normally resulting from the permanent injury. *Lente*, 275 Pa. at 222, 119 A. at 134.

Crucial to the claimant's right to total disability benefits is the testimony of Dr. Thomas J. Brobyn, M.D., whose deposition was presented on behalf of the claimant. Dr. Brobyn testified, as follows, regarding the claimant's complaints of pain and stiffness in her left index finger following her surgery:

A. Her complaint when she initially came here was that her index finger was very painful to touch, that if she touched it or it came in contact with anything she experienced exquisite pain ... And as a result, she developed a lot of stiffness in the joints of her finger and had really

not been able to recover from the laceration of the tendon.

Q. Now, would that be uncommon for the type of injury that she had sustained?

A. I would qualify for this type of an injury it is not uncommon, but it is definitely not unheard of. Now, that's a roundabout way of saying it is not terribly unusual, but it's not a frequent—I'm hedging a bit—but it certainly happens.

Q. Just so we're clear, when you say it happens, specifically what are you talking about?

A. I can't give you a figure to say this happens in 10 percent of the people with a crushed laceration of the hand. In people who have crush injuries or amputations of their fingers, traumatic amputations, it is not uncommon for people to develop painful neuromas.

Deposition of Dr. Thomas J. Brobyn, M.D. (Deposition), April 15, 1983, P. 9–11.

Dr. Brobyn testified further regarding the effect of the claimant's injured finger on the rest of her hand:

A. It's my opinion and has been my opinion for a long time that this finger makes the use of her left hand exceedingly difficult.

Q. Why is that?

A. Well, it's—to someone who has not experienced neuroma-type pain—and now this has gone on to become a dystrophic-type pain, which is related to vascular changes and things in the hand—but to people who haven't experienced that or had not dealt with that, that pain is so exquisitely terrible that it becomes extremely difficult to use an extremity or—if there's any chance that it's going to be touched, the patient—if you reach for the patient's hand, she pulls it away from you. If they touch something accidentally, if their eyes are on something and they go to reach for something and they hit that finger accidentally, it's exquisite pain. Now that, to me, makes it extremely hard for her to use her left hand. She has also had some loss of ability to bring the tips of her index,

ring and—middle, ring and little fingers in contact with the palm of her had. She has some stiffness in the joints of her other fingers, which may well be related to her inability to fully function with the hand.

Q. Would that inability be a result of the injury that she received back in 1979?

A. Okay, I don't think that anybody in the whole wide world can say it is absolutely the result of that, but I think there is a very significant chance that it is a result of the pain in the index finger and her inability to fully function because of the pain in the index finger. It is not a direct result of the injury to the finger. It's an indirect result of the injury to the index finger.

Q. I didn't get the last part.

A. Okay. It is not—in other words, the moment the index finger was injured, the middle, ring and little fingers were not injured. But over the course of time, because of the pain in the index finger and the inability to use the hand to the extent which she would want to because of the pain and sensitivity, she has developed as an indirect result loss of full ability to flex the other three fingers. The range of motion is good in those fingers, but she cannot bring them down into her palm.

Q. Do you have an opinion based on reasonable medical certainty as to her ability to use her hand, the left hand?

A. Okay. My opinion is that with the extreme sensitivity of the index finger there is a very significant loss of ability to use her hand in the way in which she would like or should be able to.

Deposition at P. 13–15.

Based on the deposition testimony of Dr. Brobyn, the referee made the following pertinent findings of fact:

7. When Dr. Brobyn saw Claimant on January 16, 1980, her complaints were that her index finger was very painful to touch and that if she touched it, or it came in contact with anything, she experienced exquisite pain. As a result Claimant developed a lot of stiffness in the joints of her finger and had really not been able to

recover from the lacerations of the tendon. (Brobyn deposition at 9).

8. The stiffness referred to in Finding of Fact 7 is not an unusual result of the type of injury Claimant sustained, and it is not uncommon for patients who suffer injuries similar to Claimant's to develop painful neuromas. Claimant's problem was in connection with a painful neuroma exclusively of her left index finger. (Brobyn deposition at 10–11, 18).

9. Dr. Brobyn's treatment of Claimant's painful neuroma did not significantly improve Claimant's condition, and after a little more than three years of treatment Claimant's left index finger remains substantially unchanged in that the finger is still stiff, the skin is thin and atrophic, there is little range of motion in the joints of her left index finger, and the finger is extremely sensitive to the slightest touch or pressure. (Brobyn deposition at 12–13).

10. The pain in Claimant's left index finger is so "exquisitely terrible" that it has become extremely difficult for Claimant to use the rest of her left hand.

11. At the moment the index finger was injured, the middle ring and little fingers were not injured. But over the course of time, because of the pain in the index finger and the inability to use the hand to the extent she wanted because of the hand pain and sensitivity, Claimant has developed, as an indirect result, loss of full ability to flex the other three fingers. The range of motion is good in those fingers, but she cannot bring them down into her palm. (Brobyn deposition at 15).

. . . .

14. All of the difficulties that Claimant experiences with her left hand—and the Referee believes Claimant's testimony that she indeed experiences great difficulty in the use of her left hand—are directly and immediately connected to her left index finger injury of December 4, 1979. The medical evidence adduced in this record does not show that Claimant sustained any injury separate and apart from the injury to her left index finger in the

incident of December 4, 1979, which injury was exclusively confined to her left index finger.

15. The incident of December 4, 1979 resulted in Claimant's loss of use of her left index finger for all practical intents and purposes. The incident did not result, for all practical intents and purposes, in the loss of use of Claimant's left hand or any of the other four fingers of that hand.

Referee's Decision, July 29, 1988 at 3–4.

Based on the referee's findings of fact and our analysis in *Truck Lubricating & Washing Co.*, the Board concluded that the claimant suffered either a loss of use of additional fingers, the loss of use of her whole left hand, or an ongoing total disability caused by a neuroma which would not normally follow from the specific loss of her left index finger.

While we agree with the Board that the usefulness of the claimant's left hand was greatly reduced as a result of a painful neuroma which developed in her left index finger, she is still not entitled to total disability compensation unless her specific loss injury results in a disability which is separate and distinct from that which normally follows such an injury, and which is the direct result of the injury. Hence, we must determine whether the neuroma pain which developed in the claimant's left index finger, and which has greatly diminished the usefulness of her whole left hand, is something which normally results from the permanent injury suffered by the claimant.

The referee found that the problem with the claimant's left hand was caused by a painful neuroma which had developed in her left index finger. He further found that it is not uncommon for patients who suffer injuries similar to the claimant's injury to develop neuromas. Contrary to the opinion of the Board, we believe that the referee's findings of fact, which are well-supported by the deposition testimony of Dr. Brobyn, establish that the neuroma which developed in the claimant's finger was an occurrence normally resulting from the type of injury suffered by the claimant.

We also believe that the Board's reliance on *Truck Lubricating & Washing Co.* is misplaced. As in this case, the claimant in *Truck Lubricating & Washing Co.* developed a painful neuroma in his left index finger which served to undermine his ability to use his left hand. *Truck Lubricating & Washing Co.*, 54 Pa. Commonwealth Ct. at 497, 421 A.2d at 1252. However, unlike this case, the claimant's expert witness in *Truck Lubricating & Washing Co.* testified that of the 500 to 700 amputees examined by him in the course of a year, only about one percent of the amputees experienced the kind of neuroma pain suffered by the claimant. *Truck Lubricating & Washing Co.*, 54 Pa. Commonwealth Ct. at 499, 421 A.2d at 1253. Because this testimony clearly established that the neuroma pain suffered by the claimant in *Truck Lubricating & Washing Co.* did not normally follow from his permanent injury, the Board properly concluded that he was entitled to total disability compensation. Here, the Board erred in concluding that the claimant was entitled to total disability compensation because the referee's findings of fact establish that the neuroma pain afflicting the claimant's left index finger, and ultimately her whole left hand, did not result in a disability separate and distinct from that which normally follows a specific loss injury such as the one suffered by the claimant.

Accordingly, the order of the Board must be reversed.

KELLEY, J., dissents.

## ORDER

AND NOW, this 30th day of January, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is reversed and the initial order of the referee granting the School District of Philadelphia's Petition for Termination, as amended to a Petition for Modification, and modifying Evelyn Pittman's compensation to the specific loss of use of her left index finger is hereby reinstated.