# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jesus Rivera,                          :
                                       :
                Petitioner             :
                                       :
           v.                          :   No. 795 C.D. 2015
                                       :
Workers' Compensation Appeal           :   Submitted:  October 16, 2015
Board (Kraft Foods, Inc.),             :
                                       :
                Respondent             :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge[1]
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**              **FILED:  February 10, 2016**

Jesus Rivera (Claimant) petitions for review of that part of the Order of the Workers' Compensation Appeal Board (Board) reversing the Workers' Compensation Judge's (WCJ) decision finding that Claimant sustained injuries separate and apart from the specific loss of Claimant's two fingers and awarding ongoing temporary total disability benefits for those separate injuries.[2]  On appeal,

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] The Board affirmed the WCJ's decision finding that Claimant had a specific loss of his small and ring fingers and affirmed the award of specific loss benefits, but modified the amount of such benefits.  Claimant does not challenge these determinations in his appeal to this Court.

Claimant argues that the Board exceeded its scope of review by impermissibly substituting its interpretation of the record evidence for that of the WCJ. Discerning no error, we affirm.

On November 8, 2010, Claimant injured his right small finger in the course of his employment, which Kraft Foods (Employer) accepted as a torn tendon.[3] Claimant underwent surgery to repair the tendon and developed an infection at the surgical site. Several additional surgeries to Claimant's hand, wrist, and forearm attempted to repair his injured tendon and resolve the infection, but they were unsuccessful and Claimant developed a second infection. Ultimately, Claimant's small finger, the associated bone structure down to his wrist, and half of his adjacent ring finger to the middle joint (PIP joint) were amputated in September 2011 to stop the infection from spreading. Additionally, "[s]ince the amputations, Claimant's [long[4]] finger remains [bent] at a ninety-degree angle." (WCJ Decision, Findings of Fact (FOF) ¶ 1(e).) Pursuant to a Functional Capacity Evaluation conducted on January 10, 2012, Claimant "was deemed valid for light use of the right hand without repetitive motion," and "was placed to permanent light duty restrictions with no repetitive use of the right hand and no lifting over 20 pounds" on March 20, 2012. (FOF ¶¶ 2(h), 3(h).) Employer filed a Modification Petition (Petition) on December 24, 2012, alleging that Claimant's work injury had

---

[3] Employer accepted the injury in a Notice of Temporary Compensation Payable, which converted into a Notice of Compensation Payable.

[4] The WCJ's findings refer to Claimant's long or middle finger interchangeably. We refer to it as the long finger.

resolved into a specific loss. Claimant denied the Petition's material allegations, and the matter was assigned to a WCJ.

In support of its Petition, Employer offered the deposition testimony of Jack Abboudi, M.D., a board-certified orthopedic surgeon with qualification in hand surgery, who examined Claimant on September 21, 2012. After taking a history of Claimant's injury and treatment, Dr. Abboudi agreed that the amputation was the appropriate method of treating Claimant. During that examination, "Claimant[:] complained of pain on the small finger side of his right hand and forearm"; indicated that his sensation was normal in his thumb, index and long fingers, and normal range of motion in his thumb and index fingers; and was unable to extend his long finger normally. (FOF ¶ 2(i).) According to Dr. Abboudi, there was no evidence of "any neuromatous formation or any contact sensitivity" in Claimant's right hand and there was no explanation for Claimant's assertions of "significant pain on the small finger side of Claimant's hand." (FOF ¶ 2(j).) Dr. Abboudi opined that Claimant "has no meaningful function of the ring finger and the small finger is a total loss." (FOF ¶ 2(l).) He further "explained that the tendons for the small, ring, and [long] fingers are all attached to the same muscle so surgery on the tendons for the ring and small fingers would affect the long finger." (FOF ¶ 2(m).)

In opposition to the Petition, Claimant testified about his employment history, how he was injured, and his medical treatment that led to the amputation of his small finger and half of his ring finger. Claimant stated that his long finger is bent at a ninety-degree angle. According to Claimant: he can pick things up with his index finger "but he cannot pick anything up with the middle finger and

3

thumb"; he is unable to carry heavy objects; he has pain and numbness when using his right hand; and he cannot grip. (FOF ¶ 1(f).) Claimant testified that "using the bathroom is a challenge," his wrist is very stiff, and he experiences forearm pain. (FOF ¶ 1(f).)

Claimant also offered the deposition testimony of his treating physician Randall Culp, M.D., who is board-certified in hand and upper extremity surgery. Dr. Culp described his treatment of Claimant, which began in February 2011, when Claimant came to him complaining of continued stiffness and pain in his small and ring fingers. Dr. Culp performed several surgeries on Claimant's hand and wrist in an attempt to resolve these issues, but after Claimant developed an infection, Dr. Culp recommended the amputations to prevent the infection from spreading. Dr. Culp explained that one of the surgeries removed a tendon from Claimant's wrist to place in Claimant's small finger. (Culp's Dep. at 12, 14-15, R.R. at 56a-57a.) He further testified that, when he performed the amputation, he removed part of the palm and sutured nerves together in an attempt to minimize any neuromas that might develop, both of which would have caused Claimant to experience pain whenever he attempted to grasp something hard. (Culp's Dep. at 16, 20-21, R.R. at 57a-58a.) Dr. Culp explained that the small, ring, and long fingers share "the same muscle belly" and that "once you start reconstructing tendons to the small and ring finger, you're looking at issues with the [long] finger as well because they have the same muscle." (Culp's Dep. at 12, 14-15, R.R. at 56a-57a.) Dr. Culp stated that he advised Claimant, prior to the amputations, that Claimant would have issues with his long finger due to that surgery. (Culp's Dep. at 17, 34, R.R. at 57a, 62a.) Although Claimant underwent physical therapy, he did not regain full range

4

of motion in what remains of his ring finger and "continues to have problems with his [long] finger," which Claimant cannot straighten. (FOF ¶ 3(g), (k).) According to Dr. Culp, "Claimant complained of hand pain, ring and [long] finger drooping and poor grip strength" on May 7, 2013, and, for the first time on June 18, 2013, Claimant complained of palm sensitivity. (FOF ¶ 3(i)-(j).) Dr. Culp opined that "Claimant sustained more injuries than just the amputation of his fingers. His long finger and a neuroma are involved. It is very difficult to objectively tell what is going on with a neuroma." (FOF ¶ 3(l).) Dr. Culp stated that there was nothing else he could do for Claimant.

The WCJ found Claimant's testimony credible and persuasive, and accepted Dr. Culp's testimony as credible and persuasive in part because he is Claimant's treating physician and actually performed the amputations. However, the WCJ did not accept Dr. Culp's testimony about Claimant developing a neuroma, finding it equivocal. The WCJ rejected Dr. Abboudi's testimony as not credible or persuasive to the extent it conflicted with Dr. Culp's because Dr. Abboudi examined Claimant once and provided confusing explanations. Based on the credited testimony, the WCJ found the following:

9. It is undisputed that, in addition to the accepted work injury of a torn tendon in the right small finger, Claimant developed an infection on two occasions that resulted in the need to amputate his small finger, part of his palm and roughly half of his ring finger.

10. It is undisputed that this is not the normal outcome for an individual with a torn tendon.

11. It is undisputed that, as a result of the two infections, the amputation . . . was the proper course of action.

12. It is undisputed that Claimant's small finger is a total loss.

5

13. It is undisputed that Claimant's ring finger was amputated to his PIP joint.

14. It is undisputed that the small finger, ring and [long] fingers all connect to the same muscle group in the hand and when surgery is performed on any of these fingers, it [a]ffects the others.

15. The infections Claimant developed and the amputation of his right small finger, part of his palm and roughly half of his ring finger as well as loss of some function of the [long] finger are injuries separate and apart from his original work injury of a torn tendon in the right small finger.

16. Employer met its burden of proving Claimant's small finger and half of his ring finger have resolved into a specific loss. However, Employer failed to meet its burden of proving that Claimant sustained no other injuries separate and apart from the original work injury of a torn tendon of the right small finger.

17. Claimant's injury shall be described as specific loss of the entire small finger and half of the ring finger on the right hand; as well as pain and numbness on the small ring finger side of the right hand, pain, numbness and loss of range of motion in the remaining half of the ring finger on the right hand and contracture to the long finger of the right hand resulting in loss of grip strength.

18. Claimant remains totally disabled from his pre-injury job as a result of the pain and numbness on the small finger side of the right hand, pain, numbness and loss of range of motion in the remaining half of the ring finger on the right hand and contracture to the long finger of the right hand resulting in loss of grip strength.

(FOF ¶¶ 9-18.) The WCJ awarded Claimant a six-week healing period and fifty weeks of benefits for his small finger and a six-week healing period and twenty weeks of benefits for the loss of half of his ring finger. Further, the WCJ concluded that Claimant was "totally disabled from his pre-injury job" and was

> entitled to ongoing temporary total disability benefits for the pain and numbness on the small finger side of the right hand, pain, numbness and loss of range of motion in the remaining half of the ring finger on

the right hand and contracture to the long finger of the right hand resulting in loss of grip strength which are injuries separate and apart from Claimant's original work injury or the specific loss.

(WCJ Decision, Conclusions of Law (COL) ¶¶ 3-4.)

Employer appealed to the Board, arguing, *inter alia*, that the WCJ applied the wrong legal standard for determining whether Claimant was entitled to receive both specific loss benefits and ongoing temporary disability benefits. Initially, the Board held that the WCJ had erred in finding that Claimant sustained the loss of only one half of the ring finger because, under Section 306(c)(15) of the Workers' Compensation Act (Act),[5] the amputation of Claimant's ring finger at the PIP joint constituted the loss of the whole finger. (Board Op. at 8.) The Board next agreed that the WCJ had erred in finding that the amputations and infections were injuries separate and apart from the Claimant's original work injury (the torn tendon) because, had it not been for the torn tendon, Claimant would not have developed the infections that ultimately required his fingers and part of his palm amputated. (Board Op. at 7.) The Board further found error in the WCJ's determination that Claimant sustained a disability that was separate and apart from the specific loss and awarding ongoing temporary disability benefits for that disability. Noting that the WCJ had found that it was undisputed that the small, ring, and long fingers connect to the same muscle group and that surgery on any of these fingers would affect the other fingers, the Board concluded that "[t]he limitations Claimant

_____

[5] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 513(15). Section 306(c)(15) states, in relevant part, that "[t]he loss of any substantial part of the first phalange of a finger, or an amputation immediately below the first phalange for the purpose of providing an optimum surgical result, shall be considered loss of one-half of the finger. Any greater loss shall be considered the loss of the entire finger." Id.

7

experiences with his long finger is a result that normally follows the amputations of the ring and small fingers, as explained by both medical experts." (Board Op. at 8.) Therefore, the Board reversed the WCJ's finding that Claimant had any injuries that were separate and apart from the specific loss and the corresponding award for ongoing temporary total disability benefits. (Board Op. at 8-9 (citing Richardson v. Workers' Compensation Appeal Board (American Surfpak), 703 A.2d 1069, 1071 (Pa. Cmwlth. 1997) (stating that benefits for total disability are allowed in addition to specific loss benefits where the specific loss injury directly results in a disability that is separate and distinct from that which normally follows such injury).) Claimant now petitions this Court for review.[6]

Claimant argues that the Board exceeded its appellate scope of review by reinterpreting the evidence to reverse the WCJ's finding that Claimant had sustained separate and distinct injuries resulting in total disability, which is supported by substantial evidence. Claimant asserts that, contrary to the Board's determination, the injuries to his long finger and the pain and numbness in his palm adjacent to where the amputations occurred are not incidental to the specific loss of Claimant's small and ring fingers but are separate and distinct which entitle him to ongoing disability benefits. According to Claimant, Dr. Culp expressly testified that while Claimant's work-related tendon rupture began everything, that injury has extended far beyond that damage to other parts of Claimant's hand, (Culp's Dep. at 23, R.R. at 59a), and Dr. Abboudi acknowledged that the damage done

---

[6] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." Department of Transportation v. Workers' Compensation Appeal Board (Clippinger), 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

8

from the initial injury has caused damage to Claimant's neighboring fingers, (Abboudi's Dep. at 58-62, R.R. at 16a-17a). The record here, Claimant contends, supports the WCJ's finding that he suffered injuries to adjacent, but separate, parts of his hand in addition to the specific loss of his two fingers that render him disabled from his pre-injury position and make him eligible for temporary total disability benefits.

In response, Employer asserts that the Board did not exceed its scope of review, but applied the correct legal standard to conclude that Claimant's specific loss injury did not result in a separate and distinct disability beyond one that normally follows the specific loss injury. Lente v. Luci, 119 A. 132, 134 (Pa. 1922); School District of Philadelphia v. Workmen's Compensation Appeal Board (Pittman), 603 A.2d 266, 268 (Pa. Cmwlth. 1992). Employer maintains that the WCJ did not apply this standard but considered whether Claimant's "additional" injuries were "separate and apart from his *original work injury* of a torn tendon in the right small finger." (FOF ¶ 15 (emphasis added).) Employer argues that a review of the medical testimony conclusively establishes that there is no injury or disability that is separate and distinct from one that naturally flowed from the amputation of Claimant's small finger and partial amputation of his ring finger.

"[I]n cases of specific loss claims, the well-established rule is that an employee who sustains an injury adjudged compensable under Section 306(c) of the Act[7] is not entitled to additional compensation even though he may be totally disabled by his permanent injury." School District of Philadelphia, 603 A.2d at

---

[7] 77 P.S. § 513.

268. There is, however, an "exception to the general rule [when] a claimant is entitled to total disability benefits under Section 306(a), in addition to benefits for specific loss under Section 306(c), where there is a destruction, derangement, or deficiency in the organs of the other parts of the body." Id. Under this exception, when "a specific loss injury results in disability which is separate and distinct from that *which normally follows such an injury*, and which is the direct result of the injury, then benefits for that disability are allowed in addition to benefits for specific loss." Id. (emphasis added). In these cases, "it must 'definitely and positively' appear that some other part of the body is affected, as a direct result of the permanent injury." Richardson, 703 A.2d at 1071 (quoting Lente, 119 A. at 133). The destruction or deficiency in the other body parts "does not include pain, annoyance, inconveniences, disability to work, or anything that may come under the term 'all disability,' or normally resulting from the permanent injury." Lente, 119 A. at 134.

There is no dispute that Claimant suffered a specific loss of his small finger and ring finger on his right hand and, therefore, was entitled to specific loss benefits under Section 306(c) of the Act. The question before us is whether Claimant also is entitled to ongoing disability benefits based on a "disability which is separate and distinct from that which normally follows" from these specific losses. School District of Philadelphia, 603 A.2d at 268. Upon review, we agree with the Board.

Although the WCJ concluded, and Claimant argues, that the injuries to Claimant's long finger and the pain and numbness in his palm, and resulting

10

disability, are separate and distinct from Claimant's specific losses, (COL ¶ 3), neither appear to appreciate that the disability must not be one that "normally follows" the specific loss injury. Lente, 119 A. at 133; Richardson, 703 A.2d at 1071; School District of Philadelphia, 603 A.2d at 268. Here, the WCJ credited Dr. Culp's testimony, with the exception of his neuroma diagnosis, and rejected Dr. Abboudi's testimony only to the extent it conflicted with Dr. Culp's. Both Dr. Culp and Dr. Abboudi testified that, because the small, ring, and long fingers share the same muscle belly, any action to one of these fingers would affect the remaining fingers. (Culp's Dep. at 12, 14, R.R. at 56a-57a; Abboudi's Dep. at 58-62, R.R. at 16a-17a.) Dr. Culp testified that he informed Claimant prior to amputating the small finger and half of the ring finger that the amputation would impact his long finger. (Culp's Dep. at 17, 34, R.R. at 57a, 62a.) Indeed, the WCJ expressly found that "when surgery is performed on any of these fingers, *it [a]ffects the others*." (FOF ¶ 14 (emphasis added).) Based on the testimony of both experts in this matter, the effect on Claimant's long finger resulting from the specific loss of his ring and small fingers is one that normally follows the amputation of those fingers. Thus, the Board did not, as Claimant argues, reinterpret this evidence in contravention of its scope of review. It merely applied the correct legal standard to the credited record evidence and came to the correct legal result.

As for Claimant's allegations regarding the pain and numbness in his hand, as noted above, the destruction or deficiency in the other body parts "does not include pain annoyance, inconveniences, disability to work . . . [that] normally result[s] from the permanent injury." Lente, 119 A. at 134. Dr. Culp testified that,

11

when he performed the amputation, he removed part of the palm to limit the amount of pain Claimant would have when he attempted to grasp something and sutured nerves together in an attempt to minimize any neuromas that might develop, which would have caused Claimant additional pain. (Culp's Dep. at 16, 20-21, R.R. at 57a-58a.) The WCJ found that Claimant had numbness in the remaining portion of his ring finger and along the small finger side of his right hand and that this numbness was disabling. Notably, the Board modified the WCJ's finding regarding the specific loss of the ring finger, concluding that Claimant sustained a specific loss of the whole ring finger. Thus, because the entire ring finger was deemed a specific loss, any disability related thereto cannot be said to be occurring in another body part. Similarly, we conclude that any complaints of numbness associated with the area in which an amputation occurred, such as the side of Claimant's hand, are also not a separate and distinct injury to another body part. Therefore, the Board did not err in reversing the award of ongoing temporary disability benefits.

Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER, Judge**

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jesus Rivera,                               :
                                            :
                 Petitioner                 :
                                            :
         v.                                 :    No. 795 C.D. 2015
                                            :
Workers' Compensation Appeal                :
Board (Kraft Foods, Inc.),                  :
                                            :
                 Respondent                 :

# **O R D E R**

    **NOW**, February 10, 2016, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

 

_____
**RENÉE COHN JUBELIRER, Judge**